810 F.2d 463
 6 Fed.R.Serv.3d 1078
 Joan F. CABELL, Administratrix of the Estate of Charles
Leslie Fitz, deceased; Walter W. Cabell; Kelly E. Fitz, a
Minor by Joan F. Cabell, Her Mother and Next Best Friend;
Dominique L. Fitz, a Minor by Sheila F. Merchant, Her Mother
and Next Best Friend, Appellees,
v.
William G. PETTY, Appellant,
and
Commonwealth of Virginia; Harvey Gray Watson, Jr., a/k/a
Harvey Grey Watson and Harvey Guy Watson, Defendants.
 No. 86-2509.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 11, 1986.
Decided Feb. 5, 1987.
 
 William G. Petty, Commonwealth's Atty. (A. David Hawkins, Overby, Overby & Hawkins, Rustberg, Va., on brief), for appellant.
 Charles J.L. Mangum, Lynchburg, Va., on brief, for appellees.
 Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Joan F. Cabell, administratrix of the estate of Charles Leslie Fitz, and certain other individuals instituted a civil action against the Commonwealth of Virginia, William G. Petty, Commonwealth Attorney for the City of Lynchburg, Virginia, and Harvey Gary Watson. The plaintiffs alleged the infliction of constitutional injury in violation of 42 U.S.C. Secs. 1981 and 1983, in connection with the 1983 murder of Fitz by Watson. Following a hearing on Petty's motion to dismiss, the plaintiffs accepted a voluntary non-suit. Petty now appeals the denial of his motion for the imposition of sanctions in the form of attorneys' fees pursuant to Fed.R.Civ.P. 11. Because we conclude that a violation of Rule 11 did occur, we reverse the order of the district court and remand for consideration of an appropriate sanction.
 
 I.
 
 2
 In December of 1982, Harvey G. Watson, Jr. was convicted of assault with a firearm in the Juvenile and Domestic Relations Court of Lynchburg, Virginia. At some time after sentencing, the weapon used by Watson to commit the assault, a ten-gauge shotgun, was apparently returned to him.[1] On August 11, 1983, Watson used the shotgun to fire on various persons residing at 1525 Bedford Avenue in the City of Lynchburg. As a result of the attack, Charles Leslie Fitz was shot in the back and died instantly. Walter W. Cabell and Kellie Fitz were wounded. Dominique L. Fitz was injured by flying glass caused by the shotgun blast.[2] Watson was subsequently convicted of murder and malicious wounding.
 
 
 3
 On August 12, 1985, Attorney Charles M.L. Mangum filed a civil action on behalf of all plaintiffs against Petty, the Commonwealth of Virginia and Watson. The complaint sought to assert an actionable violation of "28 U.S.C. Sec. 1983"[3] based upon Petty's alleged negligence in failing to move for confiscation of the shotgun at the time of Watson's appearance in juvenile court. The complaint also sought to assign liability to the Commonwealth upon a theory of respondeat superior based upon the actions of the Commonwealth Attorney and the judge of the Juvenile and Domestic Relations Court. Damages were requested in the amount of one million dollars.
 
 
 4
 On August 30, 1985, Petty filed an answer to the complaint and a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In both the answer and motion to dismiss, Petty raised substantial defenses, including absolute prosecutorial immunity and the unavailability of respondeat superior in actions under 42 U.S.C. Sec. 1983. Petty also asserted that he had no personal involvement with Watson's juvenile court case which was handled solely by Assistant Commonwealth Attorney Joseph A. Sanzone.
 
 
 5
 On September 3, 1985, the existence of defenses to the Cabell action was reiterated in a letter sent from Petty's counsel to Attorney Mangum. The letter also expressed Petty's intent to pursue a motion for attorneys' fees under Rule 11 unless the case was voluntarily withdrawn by October 16, 1985.
 
 
 6
 The action was not withdrawn and argument on Petty's motion to dismiss took place on October 22, 1985. After listening to the oral argument by Petty's counsel, and without responding, plaintiff's counsel moved for a voluntary non-suit. On October 25, 1985, the district court dismissed the action without prejudice while reserving the defendant's right to request sanctions and fees.
 
 
 7
 Petty subsequently moved for the imposition of attorneys' fees pursuant to Rule 11, contending that he and his attorney had expended 34.65 hours preparing for a frivolous case. Petty, therefore, requested an award of attorney's fees in the amount of $2,598.75. After hearing argument, the district court concluded that "[a]lthough the behavior of plaintiffs' attorney certainly bordered on a Rule 11 violation," the absence of any sign of extrinsic bad faith and the attorney's status as a sole practitioner rendered an award of fees inappropriate. The court, therefore, denied Petty's motion and directed that the action be stricken from the docket.
 
 
 8
 This appeal followed.
 
 II.
 
 9
 On appeal, Petty contends that the district court incorrectly considered the subjective intent of plaintiff's attorney in determining whether a Rule 11 violation had occurred. We find merit in this contention.
 
 
 10
 Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, states in pertinent part that:
 
 
 11
 The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 12
 From both the plain language of the rule itself and the notes of the Advisory Committee, it is clear that the rule imposes upon an attorney a duty to conduct a pre-filing examination of both the facts and the law before instituting legal process. While, as the Advisory Committee noted, the rule was not intended "to chill an attorney's creativity," it was unquestionably expected to "streamline the litigation process by lessening frivolous claims or defenses."
 
 
 13
 If an attorney's conduct appears to fall within the scope of Rule 11, the court must first examine the actions at issue according to a standard of objective reasonableness. At this stage, the inquiry focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified. If the standard of objective reasonableness is unsatisfied, sanctions are mandatory. (The court ... shall impose....")
 
 
 14
 In concluding that the pleadings in this case only "bordered" on a Rule 11 violation, the district court stated that the attorney "may have intended to make a good faith argument for reversal of Pierson and Monell and then changed his mind...."[4] The court also found the tactics used by plaintiff's counsel did not constitute harassment.
 
 
 15
 We must disagree with the district court's first conclusion while finding its second to be irrelevant to the essential inquiry. On the available record, we can see absolutely no objective indication that plaintiff's counsel ever intended to seek a modification of the law. Indeed, counsel's statements at oral argument indicate that the action was filed in a speculative effort to find someone financially liable for plaintiffs' injuries before the statute of limitations expired.
 
 
 16
 Although the absence of deliberate "harassment" may be a consideration in choosing an appropriate sanction, it is not a factor in determining a violation. Rule 11 does not prohibit merely intentional misconduct. Inexperience, incompetence, willfulness or deliberate choice may all contribute to a violation. Schwarzer, Sanctions under the New Federal Rule 11, A Closer Look, 104 F.R.D. 181, 201 (1985). The Advisory Committee noted that the amended rule set a standard "more stringent than the original good-faith formula." It was expected, therefore, that a "greater range of circumstances" would trigger a violation.
 
 
 17
 We are left with the unavoidable conclusion that plaintiff's counsel violated Rule 11 by filing the action below. The weight of existing law overwhelmingly favored the defendants, while the record appears devoid of any factual or legal investigation conducted by plaintiffs' counsel as an effort to formulate an alternative argument in favor of his clients.
 
 
 18
 It does not follow, however, that Petty is automatically entitled to an award of attorneys' fees. While some sanction is required when an infraction occurs, the determination of what is "appropriate" is still a matter left to the sound discretion of the district court. In choosing a sanction "[t]he basic principle ... is that the least severe sanction adequate to serve the purpose should be imposed." Schwarzer, 104 F.R.D. at 201.[5] On remand, many of the same factors erroneously considered by the district court in ruling on the initial motion for sanctions may be reconsidered at the proper stage of the process. We hold only that the district court must take some action in light of the clear rule violation that will serve the essential goal of education and deterence underlying Rule 11.
 
 III.
 
 19
 For the foregoing reasons, the judgment of the district court is reversed and the matter remanded for further proceedings consistent with this opinion.
 
 
 20
 REVERSED AND REMANDED.
 
 BUTZNER, Senior Circuit Judge, dissenting:
 
 21
 I applaud the majority's restraint with respect to the award of attorney fees to William G. Petty. Nevertheless, I dissent because even a reprimand is inappropriate. The district court properly held that the plaintiffs' attorney did not violate Rule 11.
 
 
 22
 Rule 11 imposes liability at the time of signing. The attorney's signature certifies "his knowledge, information, and belief formed after reasonable inquiry." The advisory committee's notes, which envision the need for some prefiling inquiry, clearly state that "[t]he standard is one of reasonableness under the circumstances." The notes urge the court to discover "what was reasonable to believe at the time the pleading ... was submitted," explaining that the determination "may depend on such factors as how much time for investigation was available to the signer...."
 
 
 23
 Frequently attorneys must act quickly to meet statutory deadlines. Confronted with this pressure they may not have time to seek further facts or hone their legal theories. The advisory committee recognizes that under these circumstances it may be reasonable for attorneys to sign a complaint and yet meet the requirements of Rule 11.
 
 
 24
 In this case, plaintiff's attorney stated, before the district court, in his brief on appeal, and at oral argument that he filed to meet the statute of limitations. At the time of filing, the attorney had reasonable grounds to believe that Harvey Watson had wounded plaintiffs and killed their kin with a gun which the Virginia court or its officers had wrongfully returned to him after his conviction for unlawfully using.
 
 
 25
 The plaintiffs' attorney based his action on Va.Code Sec. 18.2-310 which authorizes the forfeiture of weapons used in commission of crimes. Because Watson retained the gun and shot the plaintiffs and their decedent with it, the attorney alleged a failure to comply with the forfeiture statute. The defendant's pleadings disclosed that the court had indeed ordered that the gun was not to be returned to Watson. But this order was disobeyed. According to pleadings and affidavits filed in response to the complaint, the defendant denied any knowledge about the return of the weapon. An assistant prosecutor acknowledged that he knew about the court's order. Nevertheless, according to an affidavit from a police officer, the assistant prosecutor told the officer that the gun was to be returned to Watson. Thus, even after pleadings were filed and the issue joined, the difficulty of uncovering the facts in this case is apparent.
 
 
 26
 Although the plaintiffs' attorney did not discuss the merits of his complaint at the hearing in the district court, the court recognized that he may have intended to make a good faith argument for modification of the law. The record supports the district court. Both the plaintiffs' attorney's brief and oral argument contain legal arguments for the application of qualified rather than absolute immunity for the prosecutor who conducted the trial after which a gun was returned to Watson in violation of a court order. These arguments have a sound basis in law. Distinguishing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), which held that a prosecutor has absolute immunity when engaged in judicial activities, recent cases have held that a prosecutor only has a qualified immunity when carrying out administrative or investigative functions. See Kadivar v. Stone, 804 F.2d 635, 637 (11th Cir.1986). Furthermore, this court has held that a state probation officer's act which simply involved his obedience to a court order, was ministerial and, under Virginia law, not entitled to immunity. See Semler v. Psychiatric Institute of Washington, D.C., 538 F.2d 121, 127 (4th Cir.1976).
 
 
 27
 The advisory committee's notes emphasize that Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Plaintiffs' attorney's creativity in seeking to argue the theory of qualified immunity was squarely within the scope of Rule 11.
 
 
 28
 Additionally, to satisfy Rule 11 the attorney who signs a pleading certifies that, besides having a basis in fact and law, his action is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless costs. Plaintiffs' attorney cannot be faulted on this ground. He sought compensation for his clients, the innocent victims of murder and assault. Far from being improper, this purpose reflects the lawyer's duty to pursue his clients' cause and resolve doubts as to the bounds of the law in their favor. See Va.Code of Professional Responsibility EC7-3 (1983); Model Rules of Professional Conduct Rule 3-1 comment (1983).
 
 
 29
 Strong policy considerations support efforts to compensate the victims of crime. The General Assembly of Virginia has made the following declaration of legislative intent:
 
 
 30
 The General Assembly finds that many innocent persons suffer personal physical injury or death as a result of criminal acts or in their efforts to prevent crime or apprehend persons committing or attempting to commit crimes. Such persons or their dependents may thereby suffer disability, incur financial hardships or become dependent upon public assistance. The General Assembly finds and determines that there is a need for governmental financial assistance for such victims of crime. Therefore, it is the intent of the General Assembly that aid, care and support be provided by the Commonwealth as a matter of moral responsibility for such victims of crime.
 
 
 31
 Va.Code Sec. 19.2-368.1 (1983). Significantly, the Commonwealth of Virginia, a defendant in this action represented by the Attorney General, has sought neither counsel fees nor a sanction against the plaintiffs' attorney. Furthermore, the Attorney General has not joined Petty in this appeal.
 
 
 32
 The district court gave careful consideration to the motion for sanctions. It clearly stated its findings and conclusions. They are well grounded in fact and law. Dissenting, I would affirm its judgment.
 
 
 
 [1]
 The circumstances whereby Watson regained possession of the weapon are unclear. The Juvenile and Domestic Relations Court is not a court of record. In an affidavit, the Assistant Commonwealth Attorney who prosecuted the case asserts that he requested that the weapon be confiscated, but that upon representations by Watson that the gun did not belong to him, the Court ordered the weapon returned to its actual owner
 In a second affidavit, the arresting police officer who testified against Watson, stated that he understood from the Assistant Commonwealth Attorney that the gun was to be returned to Watson.
 
 
 [2]
 Walter Cabell, Kellie Fitz and Dominique Fitz were all plaintiffs who sued in their individual capacity below
 
 
 [3]
 We assume that the intended statutory reference was to 42 U.S.C. Sec. 1983 and that reference to 28 U.S.C. was a typographical error
 
 
 [4]
 Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), addresses the issue of prosecutorial immunity in cases under 42 U.S.C. Sec. 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), rejects the doctrine of respondeat superior in section 1983 actions
 
 
 [5]
 In his well-reasoned article, Judge Schwarzer noted that "where it is a first violation, a reprimand from the court will suffice."