Holly PROPST, Administratrix of the Estate of Danny Ray Propst, Plaintiff,

v.

David W. GREENE, individually and as a police officer for the Town of Hudson, Caldwell County, North Carolina; Elaine A. Price, individually and as a police officer for the Town of Hudson, Caldwell County, North Carolina; W.A. Setzer, individually and as a police officer for the Town of Hudson, Caldwell County, North Carolina; Kenneth Bumgarner, individually and as the Chief of Police for the Town of Hudson, Caldwell County, North Carolina; Joseph Icard, individually and as Mayor for the Town of Hudson, Caldwell County, North Carolina; and Town of Hudson, a municipal corporation, Defendants.

No. ST–C–87–143.

United States District Court, W.D. North Carolina, Statesville Division.

Dec. 14, 1988.

Ted S. Douglas, Hugh M. Wilson, Wilson & Palmer, P.A., Lenoir, N.C., for plaintiff.

Tyrus V. Dahl, Jr., Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. PRELIMINARY STATEMENT

THIS MATTER is before the Court on (1) Defendant Elaine A. Price's and Defendant

Joseph Icard's Motion for Sanctions Under Rule 11, filed November 16, 1988, *and* (2) Plaintiff's Motion for a New Trial, filed November 22, 1988, pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion for Sanctions shall be granted and Plaintiff's Motion for a New Trial shall be denied.

## II. BACKGROUND AND NATURE OF THE CASE

This is essentially a civil rights case arising under sections 1983, 1985(1) & (3), 1986, and 1988 of Title 42, United States Code. This Court has federal question jurisdiction, 28 U.S.C.A. § 1331 (West Supp.1988), civil rights jurisdiction, 28 U.S.C.A. § 1343 (West Supp.1988), and pendent jurisdiction, *e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), over the Plaintiff's claims.

Plaintiff, Holly Propst, is a North Carolina citizen and a resident of Caldwell County, North Carolina. She is the widow and administratrix of Danny Ray Propst. Ted S. Douglas, of Lenoir, North Carolina, and Hugh M. Wilson, of the law firm Wilson and Palmer, P.A., of Lenoir, North Carolina, represent Plaintiff.

Defendants, David W. Greene, Elaine A. Price, and W.A. Setzer were at all times relevant to this suit police officers of the Town of Hudson; Defendant Kenneth Bumgarner was at all times relevant to this suit the Chief of Police of the Town of Hudson; Defendant Joseph Icard was at all times relevant to this suit the Mayor of the Town of Hudson; and Defendant the Town of Hudson is a municipal corporation. Tyrus V. Dahl, Jr., of the law firm Womble, Carlyle, Sandridge & Rice, Winston–Salem, North Carolina, and H. Houston Groome, Jr., of the law firm Whisnart, Simmons, Groome, Tuttle & Pike, Lenoir, North Carolina, represent Defendants.

Plaintiff alleges in her complaint that Defendants deprived her husband, Danny Ray Propst, now deceased, of his rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that Defendant David W. Greene shot and killed Danny Propst and thereby used excessive force which unconstitutionally (1) seized Danny Propst, (2) infringed upon his due process rights, and (3) subjected him to cruel and unusual punishment. Plaintiff is seeking compensatory and punitive damages. In addition, Plaintiff is seeking damages on a pendent state claim for the alleged wrongful death of Danny Propst.

On October 31, 1988 through November 4, 1988, a jury trial on Plaintiff claims was conducted, the undersigned presiding. The greater weight of the credible evidence presented to the jury tended to establish the following facts.

On January 4, 1986, a Saturday, between 6:30 p.m. and 7:00 p.m., Danny Propst began to have some sort of seizure, possibly an epileptic seizure, in the living room of his apartment, which is located in the Town of Hudson, North Carolina. Holly Propst was present when the seizure began. She left the apartment to ask one of her next door neighbors for assistance, and she also asked another neighbor to call for medical assistance.

The neighbor called Caldwell County Emergency Medical Services, which, in turn, radioed the Hudson Fire Department and requested that the Hudson Fire Department's "First–Responders" answer the call. Police officers David W. Greene ("Greene") and Elaine A. Price ("Price"), both of the Hudson Police Department, monitored the radio transmission from the Caldwell County Emergency Medical Services, and they decided to respond to the call by proceeding to the Propsts' apartment in two patrol cars.

When Greene and Price arrived at the Propsts' apartment, they entered by the front door and saw Danny Propst on the living room floor. People were at that time attempting to restrain him. Neither Greene nor Price knew Danny Propst by sight. Members of the First–Responders team arrived and attempted to render first aid. Danny Propst continued to experience seizure-like symptoms, which required four to six people, at times, to restrain him.

Attendants from the Caldwell County Emergency Medical Services ("EMS") next arrived with a stretcher and other medical equipment.

The EMS attendants attempted to place Danny Propst on the stretcher to take him to the hospital, but he refused to go. At some point, while assisting at the scene, Greene observed a green .410 shotgun shell roll out of Danny Propst's shirt pocket onto the floor. Defendant Price also observed shotgun ammunition while she was moving furniture out of the way in the Propst's apartment to provide room for the medical personnel. While inside the apartment, Defendant Greene also saw a single-barrel shotgun lying on a chair in the Propsts' kitchen, and he assumed the ammunition was for the shotgun.

Someone informed Defendant Greene of Danny Propst's identity. Prior to that night, Greene had heard of Danny Propst's reputation for violent behavior and for assaults on law enforcement officers.

Danny Propst appeared to recover from his seizure, and he demanded that everyone leave his apartment, including the police officers. Defendant Greene ordered the people in the apartment to leave, and everyone left the apartment.

Defendant Greene was the last one to leave the apartment, but, before he left, a brief confrontation occurred between Defendant Greene and Danny Propst. Threatening gestures were made. Danny Propst said words to the effect, "I'll get something to make you leave." Defendant Greene left the Propsts' apartment, drew his .45 caliber revolver, and took cover behind the rear of a car parked about thirty to thirty-five feet away from the front door of the Propsts' apartment.

Danny Propst then appeared in the doorway of his apartment, behind a screen door, holding a "rifle-like" weapon. Holly Propst went to Danny Propst and tried to wrest the weapon away from him, but she was unsuccessful. Defendant Greene ordered Holly Propst to get away from Danny Propst, and she came away from the doorway saying something to the effect that, "All he has is a B.B. gun." Greene ordered Danny Propst to put the gun down and come out, but Danny Propst refused and repeatedly ordered the officers and other people to leave his premises. Danny Propst threatened to kill people saying he would, "Blow their God-damned heads off." Danny Propst repeatedly claimed he had a .30–.30 rifle in his hands. Defendant Price moved around to the rear of the apartment building, where she stayed during the remainder of the incident.

Propst and Greene continued to shout back and forth at each other. At approximately this time, Sergeant W.A. Setzer, who was Greene's superior officer, arrived at the scene and asked Greene, "What do we have here?", to which Greene allegedly responded, "10–73, 10–80," which means a mental patient with a gun. Setzer, however, did not take command or in any other way control the situation.

Danny Propst aimed his weapon at Greene, and Greene fired a single round at Danny Propst. The bullet missed Danny Propst and lodged itself in the door facing him. Danny Propst moved away from the door for a moment, and then reappeared with a "rifle-like" weapon still in his hands. Greene and Propst exchanged a few more words. Then Danny Propst once again aimed his weapon at Greene, and Greene fired his gun again. This bullet hit Danny Propst in the chest. Danny Propst was propelled backwards by the force of the shot, and he fell down on the living room floor. People at the scene rushed into the apartment to render assistance. Danny Propst was taken to Caldwell Memorial Hospital where he was pronounced dead. The weapon later retrieved was, in fact, a B.B. gun.

Plaintiff presented no evidence that Defendant Icard, a former Mayor of the Town of Hudson, had any participation in, or responsibility for, the events leading to Danny Propst's death. Neither the mayor's name nor his office were even mentioned during the Plaintiff's case in chief. Plaintiff's attorneys alleged in the complaint, however, that Defendant Icard was

> directly liable and responsible for the
> acts of [D]efendant Greene because [he]

repeatedly and knowingly failed to enforce the laws of the State of North Carolina and the regulations of the Hudson Police Department pertaining to the use of force and deadly force by the Hudson police officers thereby creating within the Hudson Police Department an atmosphere of lawlessness in which police officers employ excessive and illegal force and violence including deadly force, in the belief that such acts will be condoned and justified by their superiors, defendants Icard and Bumgarner.

Complaint, Para. 29.

Plaintiff also failed to produce any evidence establishing Defendant Price's liability, yet in the complaint Plaintiff's attorneys alleged that Price was

present with the [D]efendant Greene at the time ... and did conspire to deprive the deceased of his constitutional right to life and liberty and their combined acts committed toward said conspiracy, by aiding and [abetting] [D]efendant Greene in his unlawful shooting and killing of .... Danny Ray Propst....

....

[D]efendant Greene was assisted in the shooting of ... Danny Ray Propst, by the [D]efendants Price and Setzer, who were present at the residence of the deceased, with weapons drawn, surrounding his home and [were] in communication through radio and directly amongst and between each other and through their concerted efforts of assistance and encouragement, encouraged the [D]efendant Greene to fire the ... fatal shot, resulting in the death of Danny Ray Propst.

Complaint, Paras. 20, 21. Plaintiff presented no evidence that Price conspired with Greene or wrongfully engaged in concerted efforts of assistance and encouragement.

At the close of the Plaintiff's evidence, Defendants moved, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for a directed verdict as to Defendants Price, Setzer, Bumgarner, Icard, and the Town of Hudson; the undersigned granted the motion as to all Defendants, leaving only Defendant Greene. At that time, Defendants moved, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against Plaintiff and Plaintiff's attorneys for filing a complaint against Price, Setzer, Bumgarner, and Icard. This Court denied Defendants' Rule 11 motion as to Setzer and Bumgarner, but reserved ruling on the Rule 11 motions as to Defendant Price and Defendant Icard.

After receiving Defendants' evidence, the case was submitted to the jury on the federal causes of action only. The state cause of action was not submitted to the jury because this Court declined to continue to exercise its discretionary pendent jurisdiction over that claim.

The jury found that Defendant Greene did not use excessive force when he shot and killed Danny Propst. On November 15, 1988, a Judgment in Defendant Greene's favor was filed.

### III. PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff has raised several grounds in support of her motion for a new trial. First, Plaintiff claims that the undersigned committed reversible error by permitting Defendants to introduce into evidence a certified copy of portions of Danny Propst's criminal record, which included arrests for assaultive, violent behavior. Second, Plaintiff claims that she was unfairly prejudiced by the introduction into evidence of both a second B.B. gun owned by Danny Propst and a typical .30–.30 rifle provided by Defendants. Third, Plaintiff claims that the undersigned unfairly and prejudicially limited Plaintiff's counsel's cross-examination of witnesses and made purportedly unfair prejudicial comments in the presence of the jury. Fourth, Plaintiff claims that Defendants' counsel improperly addressed a member of the jury during Defendants' closing argument. Fifth, Plaintiff asserts that the undersigned erred by allowing Defendant Greene to testify about warnings— characterized as hearsay by Plaintiff—he had received from Danny Propst's brother. Finally, Plaintiff asserts that throughout the trial the undersigned was biased and prejudiced against Plaintiff.

On December 1, 1988, Defendants filed a response to all of Plaintiff's arguments.

This Court has carefully considered Defendants' responses and all of Plaintiff's arguments in support of her Motion for a New Trial and finds that all of the grounds Plaintiff relies upon to support her Motion for a New Trial are without any merit whatsoever. This Court will only address at length one of Plaintiff's arguments.

■ Plaintiff and Plaintiff's counsel have accused the undersigned of being unfair and biased against them. This alleged bias was purportedly manifested when the undersigned instructed Plaintiff's counsel to limit their cross-examination to relevant issues and when the undersigned questioned some of the witnesses. These accusations are simply ridiculous.

When Plaintiff and her attorneys began trying their case, the undersigned had no opinion or bias whatsoever for either side. Throughout the trial, the undersigned treated Plaintiff and her attorneys with as much respect and tolerance as any other litigant and any other attorneys. As the evidence developed at trial—and as the issues began to take definite form—the undersigned, of course, formed opinions about the relevancy of suggested lines of questioning and of proffered bits of evidence. When Plaintiff's counsel began to pursue lines of questioning that in the opinion of the undersigned were irrelevant and simply a waste of time, the undersigned admonished them to stick to the issues. The undersigned made these comments and limiting instructions to Plaintiff's counsel only after Plaintiff's counsel had engaged repeatedly in unnecessarily tedious and repetitive cross-examination. The phrase, "Beating a dead horse" comes to mind. Plaintiff and her attorneys apparently believe that a district court judge must sit behind the bench and remain impassive during repetitive, pointless, mind-numbing cross-examination. The undersigned's comments to counsel in front of the jury—which merely suggested that counsel should stick to the issues—were not at all calculated to prejudice Plaintiff and her attorneys unfairly. Nor can it be reasonably concluded that the comments had an unfairly prejudicial effect upon the jury.

When the undersigned completed Plaintiff's cross-examination of witnesses, that was done simply to get the trial moving along at a somewhat faster than glacial pace. Again, such questioning from the bench was not intended to prejudice Plaintiff, and certainly, under the circumstances, the effect of such questioning upon the jury was not unfairly prejudicial.

Although Plaintiff and her attorneys have cited Section 144 of Title 28, United States Code, that section, as Defendants have pointed out in their response, is not applicable in the present case because Plaintiff did not file the requisite affidavit and Plaintiff's counsel did not file the requisite certificate attesting to the good faith basis for such affidavit. There has been no evidence presented to establish that the undersigned improperly retained control over Plaintiff's case. This Court will deny Plaintiff's Motion for a New Trial.

## IV. DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

### A. *Defendants' Motion*

Defendants Price and Icard have moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure because they assert that there was no factual basis for the allegations in Plaintiff's complaint against them. Defendants Icard and Price assert that they have "needlessly suffered the onslaught of this action" and have "lived under the weight of this lawsuit for more than two years." Defendants seek sanctions against Plaintiff for "needlessly embroiling [them] in litigation alleging an unconstitutional killing."

According to Defendants, Defendants' counsel met with Plaintiff's counsel prior to the filing of this suit and gave them the entire police department file, including all statements and documentation of the events sued upon. Defendants argue that from that point onward Plaintiff's attorneys never had in their possession any information that would cause them to believe

that their allegations against Price and Icard were "well-grounded in fact."

### B. *Plaintiff's Counsel's Response*

Plaintiff's counsel have provided a response, but it provides little evidence of the nature and quality of the prefiling inquiry they made before they drafted, signed, and filed Plaintiff's complaint against Icard and Price. Instead, Plaintiff's counsel have attempted to explain their intentions and assumptions.

Plaintiff's counsel first remind this Court that they included in their complaint a pendent state law claim. Plaintiff's counsel assert that they intended to reach Defendant Icard on the basis of the state law tort theory of respondeat superior. According to Plaintiff's counsel, "Counsel for Plaintiff attempted to secure a judgment against as many people as possible since at the time we knew there was [i]nsurance coverage but did not know how much."

Plaintiff's counsel contend that prior to the filing of the complaint they had reports of "illegal searches, illegal stopping, illegal use of weapons, false arrests and other violations," all allegedly committed by members of the Hudson Police Department. Plaintiff's counsel assert that they intended to prove these alleged activities at trial and to show that Mayor Icard knew of them and condoned them. Plaintiff's counsel also concede, however, that *prior to filing the complaint* Plaintiff's counsel *assumed* that "Mayor Icard knew, or should have known of the reported misconduct of the officers in the performance of their duties." Although they did not have, at the time the complaint was drafted, signed, and filed, any factual basis—developed after a reasonable inquiry—for implicating Icard, Plaintiff's counsel made Icard a party because they wished to avoid the necessity—or more accurately the trouble—of amending the complaint later; Plaintiff's counsel concede that they intended to develop through discovery—after the filing of the complaint—an official policy or de facto custom of the Town of Hudson, for which Icard might be held legally and financially responsible.

Plaintiff's counsel concede that at the time of the shooting, the Town of Hudson had a city manager form of government. At the time the complaint was filed, there was no longer a city manager, and, therefore, Plaintiff's counsel *assumed* that Icard, as mayor of the town, would have access to the internal files of the Police Department and would be aware of the conduct of the police officers and whether or not their duties were being properly performed. Icard, however, was never deposed after the commencement of the lawsuit, and his answers to Plaintiff's interrogatories indicated that he had no responsibility for the operation of the Hudson Police Department.

Finally, Plaintiff's counsel simply note that they included Price as a defendant because (1) she was present when Danny Propst was having a seizure, (2) she allegedly acted in concert with Greene and was present until Danny Propst was shot, and (3) she covered the rear exit of the apartment during the incident. Plaintiff's counsel, in conclusory fashion, simply assert that Price contributed to the escalation of events leading to Danny Propst's death.

### C. *Applicable Law*

Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, states, in pertinent part, the following:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or a party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... *If a pleading*

*is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.*

Fed.R.Civ.P. 11 (emphasis added).

As the Advisory Committee Notes to the 1983 amendment to Rule 11 explain, the amended Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Advisory Committee Notes, 97 F.R.D. 198, 198 (1983); *accord NCNB Nat'l Bank of North Carolina v. Tiller,* 814 F.2d 931, 941 (4th Cir.1987); *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). "The standard is one of reasonableness under the circumstances." Advisory Committee's Notes, 97 F.R.D. at 198.

On the other hand, the Advisory Committee Notes go on to explain the following:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring into what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law or whether he depended on forwarding counsel or another member of the bar.

*Id.* at 199.

The Advisory Committee's Notes to the 1983 amendments to Rule 11 also describe the procedures the courts should follow when contemplating the imposition of sanctions:

A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 will normally be determined at the end of the litigation.... The procedure obviously must comport with due process requirements. The particular format to be followed should depend on the circumstances of the situation and the severity of the sanction under consideration. In many situations, the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary.

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

97 F.R.D. at 201.

"If an attorney's conduct appears to fall within the scope of Rule 11, the court must first examine the action at issue according to a standard of objective reasonableness. At this stage, the inquiry focuses only on whether a reasonable attorney in like circumstances would believe his actions to be factually and legally justified. If the standard of objective reasonableness is not met, sanctions are mandatory." *NCNB Nat'l Bank of North Carolina v. Tiller,* 814 F.2d 931, 941 (4th Cir.1987); *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). An attorney accused of committing a violation of Rule 11 must be given an opportunity to respond, orally or in writing, but Rule 11 does not necessarily require hearings separate from trial. *Donaldson v. Clark,* 819 F.2d 1551, 1558–62 (11th Cir. 1987); *Rodgers v. Lincoln Towing Serv.,* 771 F.2d 194, 205 (7th Cir.1985).

A district court's imposition of sanctions against counsel for pursuing frivolous litigation ordinarily is entitled to deference by the appellate courts and will not be disturbed except for an abuse of discretion. *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987); *Stevens v. Lawyers Mutual Liability Ins. Co.*, 789 F.2d 1056, 1060 (4th Cir. 1986).

### D. *Discussion*

■ In the present case, both Ted S. Douglas and Hugh M. Wilson signed Plaintiff's complaint, and, therefore, they are subject to the requirements of Rule 11. Plaintiff's counsel violated Rule 11 by filing a complaint against two individuals who had the very slimmest connections to the incident. Plaintiff's attorneys should have conducted a diligent prefiling inquiry before naming these two defendants, and yet the record before this Court indicates that they did not make such an inquiry. A reasonable attorney under the same circumstances would have conducted the prefiling inquiry required by Rule 11 and would not have included either Price or Icard in any subsequently drafted, signed, and filed complaint. Instead, Plaintiff's counsel drafted a ponderous, wordy complaint that had much sound and fury but signified little, if anything. As a result, Defendants Icard and Price were forced to have their lives needlessly and unfairly disturbed.

Lawsuits alleging constitutional violations, with their attendant adverse publicity, are serious matters that should not be visited upon innocent parties; if an attorney has sued someone without first making a reasonable prefiling inquiry into the underlying facts, then that attorney must be sanctioned under Rule 11.

Plaintiff's counsel assert that they intended to pursue a respondeat superior state tort theory of liability and that is why they joined Icard. At the trial, however, Plaintiff put on no evidence at all concerning Icard's responsibilities over the Hudson Police Department. Plaintiff's counsel concede that at the time Plaintiff's complaint

was filed they had no evidence of liability on Icard's part. Instead, they simply assumed they would be able to develop evidence of liability through discovery. They made no reasonable prefiling inquiry of any sort regarding the nature and scope of Icard's supervisory powers, and, as a result, Icard was hounded for two years as a defendant in a case alleging an unconstitutional and wrongful lethal shooting. Plaintiff's counsel's failure to conduct a reasonable prefiling inquiry amounts to a violation of Rule 11.

As to Price, Plaintiff's attorneys had little evidence at the time the complaint was drafted, signed, and filed to connect Price to the death of Danny Propst. Basically, she was there and was Greene's partner, and so she got sued. Plaintiff's attorneys have not provided to this Court one bit of evidence demonstrating that they made a reasonable prefiling inquiry before joining Price as a defendant. The evidence they produced at trial did not establish Price's liability under any theory, and yet Plaintiff's counsel never sought to dismiss Plaintiff's claims against Price. Surely during the course of discovery, a reasonable attorney would have discovered the lack of evidence against Price; under Rule 11 an attorney confronted with such a reality must take affirmative steps to rectify the situation.

Counsel have a continuing duty under Rule 11 to inquire into the facts, and counsel cannot ignore realities once facts come to their attention which indicate that an earlier reliance was misplaced. *Meadow Ltd. Partnership v. Heritage Savings & Loan Ass'n*, 118 F.R.D. 432, 434 (E.D.Va. 1987), *aff'd sub nom. Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207 (4th Cir. 1988). *Contra Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (en banc) ("While sympathizing with the concerns that prompted other panels in our Circuit to hold to the contrary, we depart from language in the instant panel's opinion and earlier decisions by this Court that impose upon an attorney a continuing obligation under Rule 11.") "To persist in claims or defenses beyond a point where they can be considered well grounded vio-

lates Rule 11." *Coburn Optical Indus., Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 660 (M.D.N.C.1985). Plaintiff's counsel should have dismissed Plaintiff's claims against Price once they knew they had virtually no case against her. Since they did not, this Court finds that they violated Rule 11.

Although this Court finds Plaintiff's attorneys have violated Rule 11, the sanction this Court will impose will not be exceedingly heavy. The Advisory Committee's Notes to Rule 11 make clear that

> the words "shall impose" in the last sentence of [Rule 11] focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to particular facts of the case, with which it should be well acquainted.

97 F.R.D. at 200. Under the circumstances of the present case, a reprimand should suffice to serve Rule 11's twin purposes of special and general deterrence. *See Cabell v. Petty,* 810 F.2d 463, 466–467 & n. 5 (4th Cir.1987) (" '[t]he basic principle ... is that the least severe sanction adequate to serve the purpose should be imposed' "; " 'where it is a first violation, a reprimand from the court will suffice' " (quoting Schwarzer, *Sanctions under the New Federal Rule 11, A Closer Look,* 104 F.R.D. 181, 201 (1985))).

It must be mentioned that the undersigned takes no great pleasure in imposing a sanction of any sort upon these attorneys, but "[i]f judges turn from Rule 11 and let it fall into disuse, the message will be clear to those inclined to abuse or misuse the litigation process." *Coburn Optical Indus., Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 661 (M.D.N.C.1985).

### V. CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED that Plaintiff's Motion for a New Trial, filed November 22, 1988, is DENIED.

IT IS FURTHER ORDERED that Defendant Elaine A. Price's and Defendant Joseph Icard's Motion for Sanctions Under Rule 11, filed November 16, 1988, is GRANTED.

IT IS FURTHER ORDERED that Ted S. Douglas, of Lenoir, North Carolina, and Hugh M. Wilson, of the law firm Wilson and Palmer, P.A., of Lenoir, North Carolina, are hereby formally REPRIMANDED for failing to make a reasonable inquiry into the facts before filing the complaint in *Propst v. Greene,* ST–C–87–143 (W.D.N.C.), which named Elaine A. Price and Joseph Icard as defendants; Plaintiff's allegations against Defendants Price and Icard were not well-grounded in fact at the time the complaint was filed, and Plaintiff's attorneys should have voluntarily dismissed the complaint as to Defendants Price and Icard when it became clear—as a result of discovery—that there was no factual basis for the allegations against either Price or Icard.