James O. BAKKER, and Wife; Tammy Faye Bakker, Plaintiffs–Appellees,

W. Ryan Hovis; Victoria L. Eslinger; Melvin Belli, Intervenors,

v.

Norman R. GRUTMAN; Grutman, Miller, Greenspoon & Hendler, Defendants–Appellants.

No. 90–2200.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1991.

Decided July 29, 1991.

Norman Roy Grutman, Grutman, Miller, Greenspoon & Hendler, New York City, argued (Jewel H. Grutman, Grutman, Miller, Greenspoon & Hendler, Robert E. Meshel, D'Amato & Lynch, New York City, Jeter E. Rhodes, Jr., Whaley, McCutchen, Blanton & Rhodes, Columbia, S.C., on the brief), for defendants-appellants.

Deborah R.J. Shupe, Berry, Dunbar, Daniel, O'Connor, Jordan & Eslinger, Columbia, S.C., argued (Victoria L. Eslinger, James A. Merritt, Jr., Berry, Dunbar, Daniel, O'Connor, Jordan & Eslinger, Columbia, S.C., on the brief), for plaintiffs-appellees.

Before WIDENER and MURNAGHAN, Circuit Judges, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

In the law as it has evolved in the United States, normally a party, plaintiff or defendant (or the lawyers for either), whether prevailing or non-prevailing, must bear his or her own expenses, including attorney's fees and costs. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975) (the "American Rule"). There are exceptions to that rule under 28 U.S.C. § 1927, which provides restitution for excessive costs, expenses and attorney's fees, and Federal Rule of Civil Procedure 11 which calls for sanctions intended to punish and deter in cases of egregiously unacceptable misconduct by a party or the lawyer or lawyers for him or her.

Awards and denials are judged on an abuse of discretion basis, and due deference, in such an event, is paid to the district judge's determination.

We have before us a case giving rise to such claims for expenses and sanctions, originally commenced by appellees the Rev. Jim Bakker and his wife Tammy Bakker (collectively "the Bakkers") on March 14, 1988, in the Court of Common Pleas, York County, South Carolina. Brought against appellants Norman Roy Grutman and the

law firm of Grutman, Miller, Greenspoon and Hendler (together referred to as "Grutman"), it alleged legal malpractice, the gravamen of which was alleged disloyalty of Grutman to the Bakkers, while serving as their counsel, in that Grutman secured the Bakkers' removal from the stewardship of the Heritage Village Church and Missionary Fellowship, Inc. ("PTL") and their replacement by the Rev. Jerry Falwell, another person allegedly represented contemporaneously by Grutman.

The case, on March 30, 1988, was removed by Grutman to the United States District Court for the District of South Carolina. Grutman then moved for an extension of time in which to file responsive pleadings. The motion stated that the request had been consented to by W. Ryan Hovis, one of the lawyers who had represented the Bakkers while the case was in South Carolina state court. When filed in state court, counsel for the Bakkers were Hovis, Melvin Belli, and James H. Toms. Upon removal to the federal district court, Hovis, Belli, and Toms were replaced as counsel by Victoria Eslinger by Order dated May 20, 1988.[1]

Grutman, upon filing an answer on April 20, 1988, on May 4, 1988, noticed the Bakkers for depositions, requesting production of an extensive list of documents. The date as of which the depositions were scheduled was May 31, 1988. On May 13, 1988, one week before her substitution was recognized by the district court, Eslinger filed a motion for a protective order, including a request for an extension of time to respond to Grutman's discovery requests. Thereafter, Hovis, Belli, and Toms played no further part in the representation of the Bakkers in the case pending in the South Carolina district court.

The requested extension to respond granted June 9, 1988 and consented to by Grutman led to a response by Eslinger that was somewhat incomplete since the doc-

uments requested were in substantial part unavailable to the Bakkers because of 1) an investigation by the Internal Revenue Service into the PTL's tax exempt status, 2) the investigation of PTL by a grand jury of the United States District Court for the Western District of North Carolina, and 3) the PTL bankruptcy proceedings which had been commenced.

The answer was not objected to by Grutman as incomplete, deficient, improper or calculated to delay or frustrate Grutman's conduct of the case.

By letter dated August 16, 1988, Grutman sought a continuance of the case, on the grounds of not being ready for trial. Next, Grutman scheduled various witness depositions in September 1988, including the deposition of the president of Rock Hill National Bank in Rock Hill, South Carolina, which counsel for Rock Hill National Bank moved to quash.

On December 5, 1988, the Western District of North Carolina grand jury indicted Rev. Bakker. On February 1, 1989, Grutman moved pursuant to Rule 37, Federal Rules of Civil Procedure, for an order compelling the Bakkers to attend the depositions as noticed.

On February 7, 1989, the Bakkers, through Eslinger, moved for dismissal of the case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), which was granted by the court on February 9, 1989. According to the memorandum in support of the motion to dismiss, the motion was based on the decision of Rev. Bakker's criminal defense attorneys (which did not include Eslinger, Hovis, Toms, or Belli) not to allow Mr. Bakker to sit for a deposition in the action, rather than because of a belief that the case was unfounded.

Thereafter, on May 12, 1989, Grutman moved for sanctions against the Bakkers and Belli pursuant to Rule 11, Federal Rules of Civil Procedure.[2] Grutman al-

---

1. Neither Belli nor Toms signed any paper after the case was removed to federal district court. The only paper signed by Hovis was his consent to the order of substitution of counsel, dated May 20, 1988. Both Hovis' and Eslinger's signatures appear on the substitution order.

2. On the same day, Grutman moved for an order requiring Belli to sign the motion for voluntary dismissal with prejudice. That motion was never resolved by the court.

leged at that time that he and his firm had incurred legal fees and expenses in excess of $54,428 in the defense of the case.[3] On February 23, 1990, over one year after the case was dismissed with prejudice, Grutman moved for Rule 11 sanctions against the Bakkers, Hovis, and Eslinger. By that time, Grutman's claimed legal fees and costs in defending the case had grown to more than $66,000.

Both of Grutman's motions for sanctions were heard by the district court on April 18, 1990. By order dated September 18, 1990, and entered on September 20, 1990, the district court denied both motions. On October 1, 1990, Grutman initiated the instant appeal.

■ Bearing in mind 1) the minimal nature of activities in federal court by those as to whom Grutman has sought sanctions, 2) the confinement of Eslinger to action concerning discovery requests with Grutman's acquiescence or non-objection to what she had done, and 3) absence of any proof that, before answering, Eslinger failed to make sufficient inquiry or that her purpose was improper, the district judge's disallowance of sanctions was not an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Blue v. Department of the Army*, 914 F.2d 525, 538 (4th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991). The district judge did not abuse his discretion in applying the standard of objective reasonableness to reach the decision that Grutman should not receive sanctions. *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

■ Of course, as to Hovis and Belli, Grutman has sought to have us apply *Meadow Ltd. Partnership v. Meadow Farm Partnership*, 816 F.2d 970 (4th Cir. 1987), to hold liable for sanctions counsel who not only appeared in state court but continued actively, without justification, to pursue the matter following removal to federal court. But, in so contending, Grutman has attempted to distinguish *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir.1987), by sliding over a controlling factual difference. Here the continued representation in the federal court was so minimal, or even non-existent, as to make *Kirby* rather than *Meadow Ltd. Partnership* applicable.

Turning to Eslinger, in view of the Supreme Court's recent ruling that Rule 11 sanctions may not be imposed upon those attorneys who do not actually sign the papers at issue, *Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the only papers prepared and filed by Eslinger and thus the only "signings" which might render her susceptible to sanctions are 1) the motion for protective order and for enlargement of time to respond to discovery requests filed on May 13, 1988; 2) the Order dated May 20, 1988 recognizing Eslinger as substitute counsel; 3) the consent order dated June 10, 1988 continuing the dates of the Bakkers' depositions and enlarging the time to respond to Grutman's discovery requests; 4) the responses to Grutman's discovery requests; and 5) the motion voluntarily to dismiss the suit with prejudice.

Before reaching the issue of sanctionability of any of those filings, the logical gap presented by *Pavelic, Kirby*, and *Meadow Farms* must be addressed. To adopt appellees' view that Eslinger cannot on any grounds be sanctioned on the basis of the complaint filed in state court, might lead to the somewhat anomalous result that not only Belli and Hovis, but Eslinger as well could automatically all escape sanctions despite the fact that the allegations contained in the complaint continued to be prosecuted for some nine and a half months.

The question is whether *Pavelic* should be read to argue against holding substituted counsel susceptible to Rule 11 sanctions on the basis of a complaint signed by a predecessor. Although *Pavelic* concerned

---

**3.** The record reveals, however, that at the time the case was dismissed with prejudice, Grut- man's legal fees and expenses were only $30,-263.

the impermissibility of holding a law firm susceptible to sanctions for a complaint signed by one of its members (and signed before the partnership was formed), the opinion appears to make clear that the "individual signer" language of the Rule is to be read quite literally:

> The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment. Where the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed. We think that to be the fair import of the language here.

110 S.Ct. at 459. Applying that rationale to the substitution of counsel in the present case, we must ask whether delegation of responsibility to one's successor was reasonable or not. We may assume that under the *Meadow Farm* analysis, when substitute counsel takes up the claim, either 1) the new counsel should be deemed to have constructively signed the complaint or 2) some new pleading should be necessary to serve as the basis for the imposition of sanctions against the successor counsel. We conclude that *Pavelic* supports only the latter.

■ Rule 11 imposes upon substitute counsel a duty to investigate the legal and factual sufficiency of the claims he or she takes up; *see Cabell*, 810 F.2d at 466; *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir.1987); but until substitute counsel files some paper indicating an intention to continue prosecution of the suit, such a decision will not be presumed by looking to the complaint itself.[4] *See, e.g., Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 210 (4th Cir.1988) (filing

of opposition to motion for summary judgment sanctionable under Rule 11); *see also La Vay Corp. v. Dominion Federal Savings & Loan Assn.*, 830 F.2d 522, 528 (4th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988) (district court should have developed record on issue of whether party against whom sanctions were sought had provided an objective basis upon which to determine reasonableness of the claim). Thus, the district court did not abuse its discretion in holding that none of the counsel for the Bakkers were exposed to Rule 11 sanctions on the basis of the initial complaint, with the only question as to Eslinger and the Bakkers remaining being whether any of Eslinger's subsequent filings after entering her appearance in the South Carolina district court were sanctionable.

■ Grutman's attempts by brief to characterize Eslinger's substitution alone as "an endorsement of her responsibility for continuing the matter and prosecuting it" is not enough. The first paper she filed and for which Grutman attacks her—the motion to extend time to respond to discovery requests—clearly indicated that she understood her responsibility was to look into the legal and factual sufficiency of the complaint, and simply needed a reasonable amount of time to do so. She did not take up the baton and charge, without pause for reflection, headlong into the litigation. *Cf. Cabell*, 810 F.2d at 466 ("Rule 11 does not prohibit merely intentional misconduct. Inexperience, incompetence, willfulness or deliberate choice may all contribute to a violation."). For that reason, Grutman's attempt to characterize Eslinger's initial prudence as harassment or vexatiousness must fail. Nothing in the record suggests that Eslinger's filing of the motion to extend was motivated by a desire to harass, vex, or annoy Grutman, or that the motion indicated a desire simply to launch headlong into continued prosecution of the claim. Indeed, there was the fact of not

---

4. For similar reasons, any improper purpose for filing the complaint in the first instance, or a consideration of the factual and legal sufficiency of the initial complaint, cannot be imputed to every subsequent action, however unobjectiona-

ble, of substitute counsel. Thus, the factual and legal sufficiency of the complaint insofar as Eslinger is concerned must be examined only in the context of her actions from May of 1988 to February of 1989.

inconsiderable weight that Grutman consented to the motion.

In another attempt to cast efforts of opposing counsel in the worst possible light, Grutman has characterized Eslinger's limited responses to discovery and her delay of the Bakkers' depositions as further proof of her knowledge that the action was a sham and of her intention simply to run up Grutman's legal bills through protracted discovery. Yet there is no support in the record for such allegations. At no time did Grutman object to the responses as being deficient, improper, or calculated to delay or frustrate Grutman's defense of the case.

Eslinger's efforts at delaying the Bakkers' deposition were motivated by a genuine concern: a lack of access to documents critical to proper deposition preparation because those documents were in the hands of the United States Attorney's Office and the bankruptcy court. It was not until February 1, 1989, that Grutman moved under Federal Rule of Civil Procedure 37 to compel the Bakkers' depositions. The Bakkers' moved for voluntary dismissal of the suit with prejudice six days later, allegedly at the request of their criminal defense lawyers.

█ We mention, but here it is unnecessary to rely on the holding by at least one district court, that Rule 11 is not available to sanction even willful refusal to engage in discovery in good faith, but is instead reserved for those papers, pleadings, and motions, for which there are no applicable Rules provisions, precluding preemption of Rules 26 and 37 for the sanction of discovery responses and abuses. *National Assn. of Radiation Survivors v. Turnage,* 115 F.R.D. 543 (N.D.Cal.1987).

█ While voluntary dismissal of a claim does not strip a district court of its power to impose Rule 11 sanctions; *Cooter & Gell,* 110 S.Ct. at 2455; the sanctions need not be imposed upon the plaintiff for failure to file a motion for dismissal at an

earlier time more to the defendant's liking. *Samuels v. Wilder,* 906 F.2d 272, 275 (7th Cir.1990) (district judge imposed sanctions because plaintiffs failed to file a document dismissing the complaint at the time the court thought they should have; Rule 11 does not support sanctions for such inactivity or belated activity); *see also Simpson v. Welch,* 900 F.2d 33, 36 (4th Cir.1990) ("Rule 11, by its own terms, can never be the basis for sanctions for *failure* to file certain papers."). Indeed, as we pointed out in *Kirby,*

> After removal to the federal court, the only action of the plaintiff's counsel as to the first four counts of the complaint was to request dismissal. Such action cannot be the basis for Rule 11 sanction.

811 F.2d at 257. Unquestionably, nine months elapsed between the time Eslinger entered the case and the time she filed for voluntary dismissal with prejudice. The procedural history of that nine months, however, indicates that Eslinger moved for an extension of time to fulfill her duties under Rule 11 to investigate the legal and factual sufficiencies of the claim she was asked to take over, reasonably moved for a delay in depositions of the Bakkers' because of a genuine lack of access to necessary documents in support thereof, and then moved for voluntary dismissal with prejudice.

The procedural history of those nine months also reveals that on August 16, 1988, Grutman sought a continuance of the case, on grounds of not being prepared for trial, and that at least one other, independent deponent, the Rock Hill National Bank in Rock Hill, South Carolina, resisted deposition by moving to quash the subpoena.

█ So, the nine month period between the time Eslinger first filed any papers and the time she filed for voluntary dismissal cannot be viewed as unreasonable delay indicating an intention to move forward in the prosecution of a frivolous case.[5]

Having found no abuse of discretion in the decisions declining to allow awards of

---

5. We thus find it unnecessary, as did the district court below, to inquire into the factual or legal

sufficiency of the complaint itself.

Rule 11 sanctions against any lawyer appearing for the Bakkers, it remains to consider such sanctions against the Bakkers themselves. But having decided denial of sanctions was not, as to counsel, an abuse of discretion, we are satisfied with a similar result with respect to the claims for Rule 11 sanctions against the Bakkers. The record reveals that, on advice of their lawyers, they instituted the action. Thereafter, they are shown to have participated in no significant, active way, leaving to the advice of counsel all decisions. Upon removal of the case to the South Carolina district court, the delay and incompleteness of responses to discovery were justified by the inaccessibility—not attributable to the Bakkers—of a number of documents. The prompt dismissal with prejudice was advocated by counsel upon the indictment of Rev. Bakker. Accordingly, the refusal to assess Rule 11 actions against the Bakkers did not amount to an abuse of discretion by the district judge.

Though failing to raise in the district court an alternative basis for sanctions under 28 U.S.C. § 1927,[6] Grutman has asserted on appeal that the district court erred in not imposing sanctions under that statute as part of its inherent equitable powers.[7]

■ Generally, a federal appellate court may not consider an issue which was not passed upon by the trial court. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases[,]" and there is no general rule governing such a determination. *Id.* at 121. We have identified such a rule as one involving "plain error," where a refusal to address the error "would result in a denial of fundamental justice." *Austin v. Torrington Co.,* 810 F.2d 416, 420 (4th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *United States v. The Barge Shamrock,* 635 F.2d 1108, 1111 (4th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981).

■ Moreover, Grutman's contention that invocation of section 1927 does not raise a new issue on appeal is erroneous. Section 1927 was intended to sanction conduct Rule 11 does not reach; *i.e.,* protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding *excess* attorneys' fees and costs. We should not here entertain the point on appeal. *See United States v. One 1971 Mercedes–Benz,* 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances.").

Reminiscent of the pot and kettle, the Bakkers' have urged us to impose sanctions upon Grutman under Federal Rule of Appellate Procedure 38 for the filing of a frivolous appeal.[8]

■ The Supreme Court made clear in *Cooter & Gell* that "[i]f the appeal of a Rule 11 sanction is itself frivolous, Rule 38 gives appellate courts ample authority to award expenses. Indeed, because the district court has broad discretion to impose Rule 11 sanctions, appeals of such sanc-

---

6. Section 1927, entitled "Counsel's liability for excessive costs," provides,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

7. Grutman has recently brought to our attention the Supreme Court's decision in *Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). There the Court ruled that the district court had not abused its discretion in resorting to its inherent powers in imposing sanctions unreachable by Rule 11 or section 1927. He cites the case in support of his section 1927 claim. Yet Grutman has not urged on appeal that the district court below abused its discretion by failing to exercise its inherent powers beyond section 1927. The case is thus inapposite.

8. Rule 38, entitled "Damages for Delay," provides,

> If a court of appeals shall determine that an appeal is frivolous, it may award damages and single or double costs to the appellee.

tions may frequently be frivolous." 110 S.Ct. at 2462 (citation omitted). Nevertheless, such is not the case here. Were it not for the procedural peculiarities of the instant case—dealing with complications in the removal and substitution of counsel— sanctions might have been warranted. But the complexity of the authority surrounding those peculiarities fully warranted an appeal, rendering Rule 38 sanctions entirely inappropriate.

The judgment is, accordingly, in all respects,

AFFIRMED.