Stanley L. BALLENTINE, Jr., Plaintiff,

v.

TACO BELL CORPORATION and Denny Koenig, Defendants.

No. 90–43–CIV–5–H.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Feb. 1, 1991.

Stanley L. Ballentine, pro se.

Odes L. Stroupe, Jr., and Randall D. Avram, Hunton & Williams, Raleigh, N.C., for defendants Taco Bell Corp. and Denny Koenig.

## ORDER

MALCOLM J. HOWARD, District Judge.

On November 5, 1990, Magistrate/Judge Charles K. McCotter, Jr., held an evidentiary hearing in the above-captioned case. On December 18, 1990, Magistrate/Judge McCotter filed his Memorandum and Recommendation in which he recommended that the court grant defendant Koenig's motion for sanctions and award to defendant Taco Bell expenses in the amount of $150.00 incurred on behalf of defendant Koenig and dismiss with prejudice plaintiff Ballentine's action against Koenig for violation of Fed.R.Civ.P. 11. Magistrate/Judge McCotter further recommended that defendant Taco Bell's motion for sanctions (including any revival of its motion to dismiss for violation of Fed.R. Civ.P. 11) be denied. Neither plaintiff nor defendants have filed objections to Magistrate/Judge McCotter's Memorandum and Recommendation, and the time for response has now run.

A careful review of the entire record in the case at bar convinces the court that the Magistrate/Judge's Memorandum and Recommendation is, in all respects, in accordance with the law and should be approved.

Accordingly, the court adopts the Memorandum and Recommendation of the Magistrate/Judge as its own; and for the reasons set forth in the memorandum, the court GRANTS defendant Koenig's motion for sanctions and awards to defendant Taco Bell expenses in the amount of $150.00 incurred on behalf of defendant Koenig and GRANTS defendant Koenig's motion to dismiss with prejudice plaintiff Ballentine's action against Koenig for violation of Fed.R.Civ.P. 11. The court further DENIES defendant Taco Bell's motion for sanctions (including any revival of its mo-

tion to dismiss for violation of Fed.R.Civ.P. 11).

## ORDER

### Filed Nov. 19, 1990

CHARLES K. McCOTTER, United States Magistrate Judge.

This matter came on for hearing on November 5, 1990, in Raleigh on the defendant's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The plaintiff appeared pro se, and Randall D. Avram represented the defendants. The motion for sanctions is ALLOWED in part and DENIED in part.

### FINDINGS OF FACT

The following findings of fact have been established by previous rulings and/or from the record in this case:

1. Taco Bell hired Ballentine in October, 1987. Taco Bell trained him as an assistant manager from October, 1987, to January, 1988. Upon the completion of his training, Ballentine was transferred as an assistant manager to a Taco Bell Restaurant in Raleigh, North Carolina. Ballentine's immediate supervisor was the store manager, Sherwin Joyner. Joyner's supervisor was a district manager, defendant Denny Koenig.

2. After his arrival at the Raleigh location, Ballentine learned that the female assistant manager, Carolyn Okaraji, was not required to work a rotating shift. Ballentine was informed during his training that assistant managers usually worked rotating shifts with other assistant managers assigned to a specific location. Okaraji had returned from maternity leave on January 27, 1988. The store manager, Joyner, and the district manager, Koenig, approved a temporary schedule whereby Okaraji would work a non-rotating shift because she was having problems obtaining child care for her newborn baby.

3. On May 2, 1988, Ballentine did not report for his scheduled shift. Upon his return to work at his next scheduled shift, Joyner and Koenig separately spoke with

him, explaining that further absences would not be tolerated.

4. On May 15, 1988, Ballentine was the manager on duty and closed the doors of the restaurant, without prior authorization, approximately one hour early. Late in that evening, Ballentine called Joyner and told him he would not report for his scheduled shift on the following day.

5. Ballentine filed a charge of discrimination with the EEOC on May 16, 1988, concerning his shift scheduling. Ballentine believed he was being discriminated against on the basis of his sex (male).

6. Ballentine did not report to work again on May 16, 1988. Later that afternoon, Koenig called Ballentine to discuss the early closing and his failure to report for work as scheduled on May 16. Koenig told Ballentine not to report to work on May 17 and to report to the training restaurant in Cary on May 18, 1988.

7. At the May 18 meeting, Koenig fired Ballentine. After Koenig fired him, Ballentine informed Koenig that he had filed a charge with the EEOC.

8. On May 20, 1988, Ballentine filed another EEOC charge against Taco Bell alleging he was terminated in retaliation for filing his first charge. Ballentine received the final EEOC determinations and right-to-sue letters on October 24, 1989. On January 23, 1990, 91 days after receiving his right-to-sue letter, Ballentine filed this action in federal court.

9. After discovery, the defendants filed the following motions. Koenig moved to dismiss for lack of subject matter jurisdiction. Taco Bell and Koenig moved to dismiss under Rule 11, claiming that this action was meritless and brought for the sole purpose of harassing the defendants. Taco Bell and Koenig moved for summary judgment. Taco Bell and Koenig also moved for sanctions on the grounds of the alleged harassment.

10. On September 21, 1990, I entered a Memorandum and Recommendation, finding the above facts in paragraphs 1 through 8. I recommended that Koenig's motion to dismiss for lack of subject matter

jurisdiction be denied as to the retaliatory dismissal claim and granted as to the sex discrimination claim. Koenig was not named in the EEOC sex discrimination charge, but was named in the EEOC retaliatory dismissal charge. Concluding that Ballentine had filed a colorable claim but that further evidence would be required on whether the complaint had been filed for an improper purpose, I recommended that the defendants' motion to dismiss under Rule 11 be denied without prejudice. Also for this reason, I reserved ruling pending an evidentiary hearing on the question of Rule 11 sanctions. I recommended that summary judgment be granted on plaintiff's wrongful discharge claim because Ballentine was an employee at will. I recommended that summary judgment be granted on his Title VII claim as being barred by the statute of limitations. I further recommended that summary judgment be granted on the sex discrimination claim for failure to make a prima facie showing and on the retaliation claim for failure to make a prima facie showing and because of legitimate nondiscriminatory reasons for the discharge.

11. On October 19, 1990, United States District Judge Malcolm J. Howard adopted with some modification the September 21, 1990, Memorandum and Recommendation. Judge Howard denied Koenig's motion to dismiss for lack of subject matter jurisdiction, granted his motion to dismiss as to the retaliatory dismissal claim, granted the Rule 11 motion to dismiss without prejudice, and granted the defendants' motion for summary judgment. In his objections to my findings, Ballentine submitted an affidavit of Sherwin Joyner, placing in dispute the issue of whether Koenig knew prior to terminating Ballentine's employment whether he had filed an EEOC claim. Despite this additional evidence, Judge Howard granted the defendants' motion for summary judgment on the basis of a legitimate, nondiscriminatory reason for the discharge.

12. In his deposition, on May 4, 1990, Ballentine said that he filed a third EEOC charge because he was "hot about everything else." (Ballentine Dep. at 167). Ballentine later dropped this third EEOC charge.

13. More significantly, Ballentine was hostile and menacing toward Koenig immediately after Ballentine's deposition. At the conclusion of the deposition, defense counsel Avram left the room for a brief period. At that time, the court reporter's back-up tape recorder recorded the following exchange:

> Mr. Ballentine: Before this is over with, I'm going to see that you lose your job, you understand? There's no way you should be working in the industry at all. Caused me to lose my job; cause other people to lose their jobs. You lose your family, your wife, your kids, your home. Menace. You understand me? Huh?
>
> A liar. Can't stand 'em. Despise 'em.
>
> I will see that you lose your job, you understand me? And if that's not enough, you're on my turf.

In my Memorandum and Recommendation, I found these remarks to be threatening, intimidating, and totally inappropriate. I found that the remarks show bad faith. I concluded that Ballentine's actions at the deposition are evidence of bad faith and improper purpose at the time of filing the complaint for Rule 11 purposes. I also concluded that without further evidence the Court could not find that the plaintiff merely filed a colorable suit for the purpose of imposing expense and harassment on the defendants. I reserved ruling on the question of sanctions pending an evidentiary hearing.

14. At the evidentiary hearing, Ballentine, the court reporter who recorded his deposition remarks, and the defendant Koenig testified. The Court makes the following findings of fact as a result of the evidentiary hearing:

(a) Ballentine candidly admitted that he made the comments at the deposition and admitted their inappropriateness. He apologized for having made those comments. Ballentine testified that he didn't bring the lawsuit for the purpose of harassment, but because he felt that he had a legitimate claim, and he wanted his job back.

(b) Koenig was a very credible witness. At the time in question he was district manager of Taco Bell and that he is now a general manager. Koenig made the decision to discharge Ballentine. At the meeting on May 18, 1988, he informed Ballentine of his discharge. During this conversation, Ballentine asked, "Does this mean I am terminated or fired?" Koenig indicated that it did. Ballentine then pulled out a piece of paper showing him where he had filed an EEOC charge.

(c) As Ballentine was leaving, Koenig said that he hoped he could find employment, and Ballentine replied, "This isn't over. You will be hearing from me for many years to come."

(d) During the deposition on May 4, 1990, Ballentine began staring at Koenig. The friction increased to where Ballentine was asked to stop. Immediately following the deposition, defense counsel Avram briefly left the room to make some copies. Ballentine stood up, put his hands on the table, leaned across the table, and in a calm voice made the statements to Koenig. Koenig felt threatened. He was unsure of Ballentine's frame of mind and asked for an escort when leaving the building.

(e) Except to take away about 20 or 30 hours from his job and duties, the lawsuit has not affected Koenig's job.

(f) Ballentine was the first assistant manager that Koenig had discharged. Prior to discharging Ballentine, Koenig had not discussed the discharge with his general manager, but had talked with personnel in the company's human resources branch. Ballentine showed Koenig the EEOC complaint after he had fired Ballentine.

15. As a result of the hearing, I specifically find that Ballentine at the time of the filing of the complaint felt that he had a legitimate claim. However, I also find, from the statements he made, that Ballentine also filed the suit to harass and intimidate Koenig and in an attempt to make Koenig lose his job with Taco Bell.

## CONCLUSIONS OF LAW

The defendants contend that they are entitled to sanctions because Ballentine brought this action for the improper purpose of harassing the defendants and to cause Taco Bell to fire Koenig.

At the hearing on the question of sanctions, the defendants requested two alternative sanctions: (1) the recovery of over $20,000 in attorney fees and costs in defending this action, or (2) that if Ballentine is prepared to offer an oral and written apology to the defendants along with a lesser sanction of a smaller award of costs and expenses such as those incurred in pursuing the motion for sanctions.

Rule 11 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading ... is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading ..., including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

"The imposition of sanctions turn on the finding of 'any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" W. SCHWARZER, SANCTIONS UNDER THE NEW FEDERAL RULE 11—A CLOSER LOOK, 104 F.R.D. 181, 195 (1985). Even though well grounded in law or fact, a pleading filed for an improper purpose can violate Rule 11. *Harris v. Marsh*, 679 F.Supp. 1204 (E.D.N.C.1987); *Storage Technology Partners II v. Storage Tech-*

*nology Corp.*, 117 F.R.D. 675 (D.Colo. 1987). However, strong authority suggests that "[i]f a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found, and sanctions are inappropriate." Schwarzer, *supra* p. 196. In assessing an attorney's conduct in respect to improper motive under Rule 11, the Fourth Circuit has held that the court must consider the conduct under an objective standard of reasonableness rather than assessing subjective intent. *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207 (4th Cir. 1988); *see also, Stevens v. Lawyers Mutual Liability Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986).

 In my Memorandum and Recommendation of September 21, 1990, I found that Ballentine had made a reasonable inquiry into the facts and law. Despite this, I have found that Ballentine had a dual motive in filing the lawsuit: the legitimate purpose of seeking relief for the loss of his job and the improper purpose of harassing Koenig. Under these circumstances, I conclude that even though the pleading may have been well grounded in law or fact, the fact that it was filed for an improper purpose violates Rule 11.

In *Marsh*, United States District Judge James C. Fox described the operation of Rule 11:

19. Rule 11 contains two independent grounds for sanctions. Each is concerned with eliminating abuses in the federal courts. The first is the "frivolousness clause." This portion of Rule 11 is composed of two subparts: (1) whether the party or attorney made a reasonable inquiry into the facts and (2) whether the party or attorney made a reasonable inquiry into the law. A violation of either subpart constitutes a violation of Rule 11....

....

21. The other prong of Rule 11, the "improper purpose" clause, prohibits the filing of any document for purposes of delay, harassment, or increasing the cost of litigation. Like the frivolousness clause, whether a party acted with an improper purpose is based on an objective standard, although subjective bad faith may be important when the suit is objectively colorable. "The rule effectively picks up the torts of abusive process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for purpose of imposing expense on the defendant ...)." Thus, subjective bad faith is relevant where claims maliciously are prosecuted but not in situations where a party repeatedly has pursued or prolonged implausible claims.

*Marsh*, 679 F.Supp. at 1385–86 (citations omitted). I conclude that Rule 11 has a subjective component as well. Subjective bad faith may be considered when the suit is objectively colorable. *Id.; see also, Szabo Food Services, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987). I further conclude that the defendant Koenig is entitled to an award of sanctions because one of the main reasons Ballentine included Koenig in the suit was to harass him, an improper purpose under Rule 11.

Having decided that the plaintiff violated Rule 11, I must determine appropriate sanctions. Again, Judge Fox's opinion in *Marsh* is instructive:

Due to the impact sanctions may have on a party or an attorney's career and their personal well-being, sanctions should not be lightly imposed. Thus, the basic principle underlying the imposition of sanctions, ... is that the least severe sanctions adequate to serve the purpose should be utilized.

Although courts always should bear in mind this basic principle, sanctions must be assessed in light of the above theories' several related purposes. One of the goals is to impose costs on the careless, reckless, or indifferent lawyer or party. Thus, compensation is a main thrust of Rule 11. ("Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorney's fees ...")....

Compensation, although an important consideration, is not the only purpose underlying the above rule. An even

more important policy is deterrence. In this sense, the rules provide for sanctions, not simply fee shifting. They aim to deter and, if necessary, punish improper conduct rather than merely to compensate the prevailing party. The key to invoking sanctions is the nature of the conduct of counsel and the parties, not the outcome....

Of course, a district court has the discretion, upon consideration of all of the above principles, to fashion a sanction for purposes of deterrence which awards part, but not all, of the opposing party's fee request. Adequate deterrence may permissibly fall short of full compensation.

*Marsh,* 679 F.Supp. at 1390 (citations omitted).

 Rule 11 provides the court with substantial discretion to fashion an appropriate sanction to deter similar future conduct. *Cabell v. Petty,* 810 F.2d 463 (4th Cir.1987). In selecting a sanction, the basic rule is that the least severe sanction adequate to serve the purpose should be used. *Id.* Rule 11 provides:

If a pleading ... is signed in violation of this rule, the court ... shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing of the pleading....

Fed.R.Civ.P. 11.

 In determining sanctions, the court must consider any equitable considerations. Although equitable considerations are not relevant to the initial decision to impose sanctions as a matter of law, in appropriate cases they act as ingredients in the discretionary aspect of fashioning an award. Factors to consider include the ability of the sanctioned party to pay the award, whether the party seeking fees prolonged the litigation, and the relative financial conditions of the parties.

*Marsh,* 679 F.Supp. at 1391 (citations omitted).

 The equitable considerations in this case do not justify an award of attorney fees and expenses incurred by Taco Bell or Koenig in defense of the case. However, Koenig's attorney fees and expenses in pursuing the motion for sanctions may be appropriate. The defendants are ORDERED to submit an affidavit itemizing in detail Koenig's attorney fees and expenses incurred in support of the motion for sanctions and hearing on the same. The affidavit should address the hours and rates of the attorney fees and the twelve factors identified in *Barber v. Kimbrell's Inc.,* 577 F.2d 216 (4th Cir.1978), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), for attorney fee awards. *See Plyler v. Evatt,* 902 F.2d 273 (4th Cir.1990).

I have narrowed the list of appropriate sanctions to nominal sanctions, Koenig's attorney fees and expenses of defendants in preparing and presenting the motion for sanctions, and/or granting of Koenig's motion to dismiss with prejudice pursuant to Rule 11. I do not anticipate the need for further hearing on the question of sanctions. However, if the parties wish to address the appropriateness of any of these sanctions, they may do so in accordance with the briefing schedule set forth in the last paragraph of this Order.

In determining an appropriate award of sanctions, I have assessed the relative financial ability of the parties. In considering this, I have made the following assumptions: The plaintiff filed this action in forma pauperis. In support of his application, he signed an affidavit on January 22, 1989. The plaintiff has proceeded pro se and indicates that the reason is that he cannot afford counsel. Based on his statements at the hearing, I *assume* that the plaintiff's financial condition has not changed substantially. On the other hand, I *assume* that the defendant Taco Bell is a financially sound corporation with substantial financial resources. I *assume* that the defendant Koenig, who holds a managerial position with Taco Bell, relatively is in a better financial condition than the plaintiff and is not indigent. If these assumptions are incorrect, then the parties shall note any objection to the assumptions and provide

me additional information to further assess the financial ability of the parties.

The defendants are ORDERED to file on or before November 26, 1990, any affidavit in support of attorney fees and expenses incurred in connection with the motion for sanctions, any objection to my assumptions as to the relative financial ability of the parties, and any argument in support of the appropriateness of any of the sanctions outlined in the preceding paragraph. The plaintiff is ORDERED to file on or before December 6, 1990, any response to the affidavit in support of attorney fees and expenses, any objection to my assumptions as to the relative financial ability of the parties, and any argument in support of the appropriateness of any of the sanctions outlined in the preceding paragraph.

THIS ORDER ENTERED, this the 16th day of November, 1990.

## MEMORANDUM and RECOMMENDATION

### Filed Dec. 18, 1990

On November 16, 1990, I entered an Order on the plaintiff's motion for sanctions, allowing the motion in part and denying the motion in part. In an earlier Memorandum and Recommendation of September 21, 1990, I found that Ballentine's threatening and intimidating remarks to Koenig at a deposition were inappropriate and evidence of bad faith and improper purpose at the time of the filing of the complaint for Rule 11 purposes. After an evidentiary hearing on November 5, 1990, I made further findings of fact, which are contained in the November 16, 1990, Order. I specifically found that although Ballentine, at the time of the filing of the complaint, felt that he had a legitimate claim, he also filed the suit to harass and intimidate Koenig and in an attempt to make Koenig lose his job with Taco Bell. I concluded that even though the pleading may have been well grounded in law or fact, it was filed for an improper purpose, violating Rule 11. I also concluded that the defendant Koenig is entitled to an award of sanctions, because one of the main reasons Ballentine included Koenig in the suit was to harass him. In choosing an appropriate sanction, I narrowed the list to

nominal sanctions, Koenig's attorney fees and expenses of defendants in preparing and presenting the motion for sanctions, and/or granting of Koenig's motion to dismiss with prejudice pursuant to Rule 11. I established a briefing schedule to allow the parties to address the appropriateness of any of these sanctions, including further evidence in support of attorney fees and expenses and the Court's assumptions as to the relative financial abilities of the parties. The parties have now responded to the Order of November 16, 1990. This matter is now ripe for determination of the appropriate sanctions for Ballentine's bad faith in including Koenig as a defendant to this lawsuit.

In the defendants' response, the defendants indicate that the defendant Taco Bell paid the legal fees of the defendant Koenig and, therefore, Koenig does not make a claim for costs and fees. However, Taco Bell does and has attached a copy of the costs and expenses of preparing and pursing the motion for sanctions.

The defendants' response does indicate a misunderstanding of the effect of my Order of November 16, 1990. In their response, the defendants say, "As a sanction, the Court awarded defendant Koenig his costs and attorney fees for defending this case and awarded Taco Bell its costs and fees expended in preparing and presenting the motion for sanctions." In the November 16 Order, I specifically concluded that an award of attorney fees and expenses incurred by Taco Bell or Koenig in the defense of the case was not justified. I concluded that Koenig's attorney fees and expenses in pursuing the motion for sanctions may be appropriate. I narrowed the list of sanctions and then gave the parties the opportunity to address the appropriateness of any of these sanctions.

In his response, the plaintiff seems to reiterate his position that he did not file the lawsuit for the purpose of harassment.

In my Order of November 16, 1990, I assumed that the defendant Taco Bell has substantial financial resources and that the defendant Koenig is in a better financial

condition than the plaintiff and is not indigent. I assumed that Ballentine is indigent. I gave the parties an opportunity to speak to these assumptions. None of the parties objects to these assumptions as to the relative financial ability of the parties.

Before I address the question of appropriate sanctions, two recent decisions of the Fourth Circuit Court of Appeals, dated September 18, 1990, concerning Rule 11 sanctions should be addressed. The case of *In re Kunstler*, 914 F.2d 505 (4th Cir.1990), *petition for cert. filed*, 59 U.S.L.W. 3406 (U.S. Nov. 19, 1990) (No. 90–802), discusses how to treat a complaint filed with a mixed motive of a proper and improper purpose. The Fourth Circuit decision in *Blue v. U.S. Dept. of Army*, 914 F.2d 525 (4th Cir.1990), affirmed in part and reversed in part the decision of United States District Judge James C. Fox in *Harris v. Marsh*, 679 F.Supp. 1204 (E.D.N.C.1987). In my Order of November 16, 1990, I found the *Marsh* decision to be instructive. The *Blue* decision does not cause me to change my reliance upon *Marsh*. However, the *Kunstler* decision causes me to amplify my findings of fact and conclusions of law.

■ In *Kunstler*, the Fourth Circuit discusses the meaning of the term "improper purpose" under Rule 11:

Rule 11 defines the term 'improper purpose' to include factors 'such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.' The factors mentioned in the rule are not exclusive. If a complaint is not filed to vindicate rights in court, its purpose must be improper. However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere.

914 F.2d at 518. In *Kunstler*, the Fourth Circuit reiterated that the improper conduct must be measured under an objective standard of reasonableness rather than assessing subjective intent. 914 F.2d at 518. The correct focus is upon the improper purpose of the signer, and such purpose must be determined from the motive of the signer in pursuing the suit. *Id.* at 519. The subjective beliefs of the injured party are not relevant, and the Court must look at more objective evidence of the signer's purpose. *Id.* This does require consideration of the signer's subjective belief. *Id.*

In view of *In re Kunstler*, I supplement my findings as follows:

Although Ballentine, at the time of the filing of the complaint, felt that he had a legitimate claim, he also filed the suit in bad faith to harass and intimidate Koenig and in an attempt to make Koenig lose his job with Taco Bell. Ballentine's central purpose in adding Koenig to the lawsuit was to harass him. Ballentine's purpose in naming Koenig to the lawsuit was so excessive as to eliminate any proper purpose. Ballentine's purpose of vindicating rights in court was not central and sincere.

■ I also wish to amplify my conclusions of law in light of *Kunstler*. One of the propositions for which I cited *Marsh* in my Order of November 16, 1990, was that compensation to the injured party is the main thrust of Rule 11. *Kunstler* instructs that the primary purpose of Rule 11 is to deter future litigation abuse, although compensation and other factors may be considered as well. 914 F.2d at 522. This amplification of my conclusions of law does not change any of my other conclusions of law or any of my findings of fact.

■ *Kunstler* is instructive on another point. In issuing a monetary award, the Court should consider the following four factors: (1) the reasonableness of the opposing party's attorney fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation. 914 F.2d at 523. Consideration of these factors does not cause me to change any of my prior conclusions of law or findings of fact. However, these factors will continue to be instructive in determining an appropriate sanction.

The Court concludes that the appropriate sanction is the granting of Koenig's motion to dismiss with prejudice pursuant to Rule 11 and an award of some of Koenig's attorney fees in preparing and presenting the motion for sanctions. In choosing these sanctions, I have considered a range of sanctions, from an award of attorney fees and expenses incurred by defendants in defense of the case to nominal sanctions. I have evaluated the lack of merit of Ballentine's action against Koenig. I have considered the relative financial conditions of the parties. I have considered the fact that Ballentine has apologized for his conduct. I have chosen the least severe sanction adequate to deter similar future conduct.

The defendants have submitted an affidavit showing the expenses incurred in support of the motion to compel. The defendants have submitted attorney fees of $1440.00, representing 12 hours at $120 an hour, and photocopying expense of $5.40. These expenses are reasonable. The attorney fees, hourly rate, and time expended are reasonable, considering the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, the attorney's opportunity costs and expectations, time limitations, the amount in controversy and results obtained, the experience, reputation and ability of the attorney, the desirability of the case in the legal community, the nature and length of the professional relationship between attorney and client, and the customary fees for like work. *Plyler v. Evat*, 902 F.2d 273 (4th Cir.1990). However, I recommend awarding a reduced amount of expenses, the sum of $150.00, as sanctions for the following reasons. The Court wishes to award expenses incurred by or on behalf of the defendant Koenig in seeking the award of sanctions. At least 50 per cent of the expense of the motion to compel was incurred by Taco Bell on its own behalf, with the balance being incurred by Taco Bell on behalf of Koenig. Ballentine has proceeded in forma pauperis and does not have significant financial resources. He has apologized for his conduct. Further, the Court has also awarded as sanc-

tion the granting of Koenig's motion to dismiss for violation of Rule 11.

Accordingly, I recommend that the Court GRANT the defendant Koenig's motion for sanctions and award to the defendant Taco Bell expenses in the amount of $150.00 incurred on behalf of the defendant Koenig and dismiss with prejudice Ballentine's action against Koenig for violation of Rule 11. I further recommend that Taco Bell's motion for sanctions (including any revival of its motion to dismiss for violation of Rule 11) be DENIED.

THIS MEMORANDUM AND RECOMMENDATION ENTERED, this the 17th day of December, 1990.