**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George BORDEN, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Billy SMITH, Sr., Defendant–Appellant.**

**Nos. 92–5826, 93–5271.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1993.

Decided Nov. 26, 1993.

---

George Edward Lantz, Lantz & Tebay, Parkersburg, WV, argued for defendant-appellant Borden.

George Joseph Cosenza, Cosenza & Underwood, Parkersburg, W.V., argued for defendant-appellant Smith.

Phillip Blair Scott, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

## OPINION

WILKINSON, Circuit Judge.

This consolidated appeal requires us to determine the applicable statute of limitations for charges under the Lacey Act, 16 U.S.C. § 3371, *et seq.*, which prohibits the transportation, sale, or purchase of fish or wildlife obtained in violation of any state law or regulation. We hold that the federal "catchall" statute of limitations in 18 U.S.C. § 3282 applies to Lacey Act crimes and that a defendant can be charged under the Lacey Act even when the statute of limitations for the predicate state offense has run. In so holding, we affirm the judgments of conviction.

### I.

#### A.

Billy Smith dove for mussels in the rivers and lakes of western Tennessee. Smith would sell these mussels to the George D. Borden Shell Company, which would then process the mussel shells and export them to Japan. In Japan, the mussel shells were cut into small pellets and implanted in live oysters as seeds for cultured pearls.

Due to extensive harvesting, the supply of freshwater mussels in western Tennessee was depleted by the early 1990's. In late 1990, Smith discovered freshwater mussel beds in the Ohio River near Williamstown, West Virginia. Although the West Virginia Department of Natural Resources ("DNR") repeatedly informed Smith that its regulations prohibited taking Ohio River mussels for commercial purposes, Smith nonetheless dove for mussels from May to September of 1991. During that period, Smith and his family transported 76,770 pounds of illegally-obtained mussel shells from West Virginia to Tennessee and sold them to the Borden Company.

In September 1991, Smith provided two other divers, Larry Hobbs and Arlene Treece, with a boat, diving equipment, and information on the Ohio River mussel beds in exchange for one-half of their profits. Hobbs and Treece obtained 624 pounds of West Virginia shells and sold them to the Borden Company for $1751.25. The Smith family assisted in the sale and kept half of the money.

On October 1, 1991, the DNR began arresting Ohio River divers on state wildlife misdemeanor charges. Subsequently, federal officials initiated an investigation of the interstate transportation of illegally-obtained West Virginia shells. As a result of the investigation, Smith was indicted for seven violations of the Lacey Act, which provides that it is "unlawful for any person ... [to] transport, sell, receive, acquire or purchase in interstate or foreign commerce[ ] any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State...." 16 U.S.C. § 3372(a)(2)(A). Smith's indictment was based on his violation of W.VA. CODE § 20–2–4, which prohibits any person from possessing wildlife during "closed seasons," and W.VA. CODE § 20–2–12, which prohibits any person from transporting illegally obtained wildlife out of West Virginia.

Smith moved to dismiss the indictment on numerous grounds. After the district court denied the motion to dismiss, Smith pled guilty to count one of the indictment—conspiracy to commit Lacey Act violations—on the condition that he be permitted to seek appellate review of the adverse ruling on his motion to dismiss. In March 1992, Smith was sentenced to fifteen months imprisonment and three years supervised release, and ordered to pay $100,000 in restitution to DNR and a $50.00 special assessment. Smith now appeals.

### B.

The federal investigation of Ohio River musseling activity also resulted in an indictment of George Borden, owner of the Borden Company. In addition to buying illegally-obtained mussel shells from Smith, Borden engaged in other illegal musseling operations facilitated by Smith's discovery of the Ohio River mussel beds. In September 1991, a self-employed shell buyer named Danny Hicks obtained Ohio River shells from various divers and sold 593 pounds of shells to Borden for $891.80. At that time, Hicks told Borden that the shells had been illegally obtained from West Virginia. They agreed to cover up the illegal origin of the shells by falsely recording all sales of the Ohio River shells under Hicks' Alabama buyer's license.

Later in September, Borden traveled to West Virginia and brought 5165 pounds of shells back to Tennessee. Borden also made numerous cash advances to Hicks, who used the money to buy more unlawfully obtained West Virginia shells. In addition, Borden revealed the location of the Ohio River mussel beds to four Tennessee divers, who then obtained 3824 pounds of shells and sold them to Borden for $9022.25.

These various musseling activities led to a three-count indictment for violations of the Lacey Act. All three counts, like those in Smith's indictment, were predicated on Borden's violation of W.VA. CODE §§ 20–2–4 and 20–2–12. Borden moved to dismiss the indictment on a variety of grounds, all of which the district court denied. Borden subsequently pled guilty to count two of the indictment—aiding and abetting the transportation in interstate commerce of illegally-obtained mussels—on the condition that he be permitted to seek appellate review of the district court's denial of his motion to dismiss. The district court then ruled that Borden's sentence should include a five-level enhancement for the market value of the illegally-obtained wildlife and a two-level enhancement for Borden's leadership role in the criminal activity. Borden was sentenced to twelve months and one day imprisonment and two years supervised release, and ordered to pay $4800 in restitution fees to DNR and a $50.00 special assessment. Borden now appeals the district court's denial of his motion to dismiss the indictment.

The appeals of Borden and Smith have been consolidated for review.

## II.

Smith's indictment for conspiracy to violate the Lacey Act was predicated upon violations of two state statutes, W.VA. CODE §§ 20–2–4 and 20–2–12. Smith contends that his indictment is invalid because the one-year statute of limitations for the predicate state offenses had expired by the time the indictment was returned. The state statute of limitations governs Lacey Act violations, Smith argues, because the existence of a *prosecutable* violation of state law is necessary to support a Lacey Act indictment.

■ We disagree. The Lacey Act is a federal statute. It creates a federal wildlife offense to be enforced by federal officials and adjudicated by federal courts. *See* 16 U.S.C. §§ 3375(a) & (c). It follows that Lacey Act crimes are to be governed by federal procedural rules, including federal statutes of limitations. *See United States v. Thomas,* 887 F.2d 1341, 1348–49 (9th Cir.1989); *United States v. Hagen,* 782 F.Supp. 1351, 1365 (D.Neb.1991).

■ The fact that the Lacey Act refers to state law does not affect the federal statute of limitations analysis. Although Lacey Act offenses are predicated upon violations of state law, the statute nowhere states that a viable or prosecutable state law violation is necessary to support federal charges. Instead, the Act simply requires that the fish or wildlife have been obtained "in violation of any law or regulation of any State." 16 U.S.C. § 3372(a)(2)(A). This provision incorporates the substantive elements of state law in describing a distinct federal offense, but it "is not designed to incorporate state *procedural* law." *Thomas,* 887 F.2d at 1349 (emphasis added); *see also United States v. Licavoli,* 725 F.2d 1040, 1047 (6th Cir.1984) (holding that RICO's reference to state law "is not meant to incorporate state procedural law").

■ Because the running of the state statute of limitations does not change the fact that Smith violated state law by acquiring, possessing, transporting, and selling mussel shells, it cannot relieve Smith of criminal liability under the Lacey Act. To hold otherwise would not only be contrary to the language of the Lacey Act, but would also vitiate Congress' intent to create a powerful "[f]ederal tool to aid the [s]tates in enforcing their own laws concerning wildlife." S.REP. NO. 123, 97th Cong., 1st Sess. (1981), *reprinted in* 1981 U.S.C.C.A.N. 1748, 1749.

■ Having decided that a uniform federal statute of limitations governs this case, we must turn to "18 U.S.C. § 3282[,] ... the general 'catchall' federal criminal statute of limitations," because the Lacey Act itself includes no statutory limitations period. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 155, 107 S.Ct. 2759, 2766, 97 L.Ed.2d 121 (1987) (stating that the general limitations period governs criminal RICO charges predicated upon state crimes). The catchall federal statute of limitations "operates to forbid prosecution, trial, or punishment 'unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.' " *Id.* at 157, 107 S.Ct. at 2768 (Scalia, J., concurring) (quoting 18 U.S.C. § 3282). Because Smith's illegal musseling activities occurred in 1991, the statute of limitations will not expire until 1996. We therefore uphold the district court's denial of Smith's motion to dismiss on statute of limitations grounds.

## III.

■ Borden and Smith next challenge their convictions on the ground that the predicate state statutes, W.VA. CODE §§ 20–2–4 and 20–2–12, discriminate against out-of-state residents in violation of the Commerce and Privileges and Immunities Clauses. However, the two state statutes do no more than prohibit the possession and out-of-state transportation of illegally obtained wildlife, and thus do not discriminate against out-of-state residents on their face. Appellants concede as much and instead base their argument on another statute, W.VA. CODE § 20–2–59, which permits only West Virginia and Ohio citizens to obtain commercial fishing licenses for the Ohio River. According to appellants, because § 20–2–59 operates to bar out-of-state residents from lawfully obtaining fish and wildlife under a proper fish-

ing license, out-of-state residents can never lawfully possess Ohio River wildlife under § 20–2–4 or § 20–2–12.

Appellants' reliance on § 20–2–59 is misplaced. In order to preserve the ecological balance of West Virginia rivers, the West Virginia DNR promulgated regulations that (1) prohibited all persons from musseling at all times and (2) closed the Ohio River to all commercial fishing beginning September 5, 1989. Appellants' Lacey Act convictions were based *not* on their lack of a fishing license or their residency, but on the fact that DNR regulations prohibited *all* persons (residents and non-residents alike) from musseling in the Ohio River. Because West Virginia law banned the activity in which appellants engaged irrespective of their residency, we find no merit in appellants' arguments.*

## IV.

Smith challenges the validity of his indictment on the ground that it did not state the "essential facts constituting the offense charged," as required by FED.R.CRIM.P. 7(c)(1). More specifically, Smith argues that the indictment was insufficient because it stated only that Smith violated W.VA. CODE §§ 20–2–4 and 20–2–12 and failed to list the facts necessary to prove that Smith violated those two statutes.

We decline to consider this claim because Smith did not properly preserve it for appeal. FED.R.CRIM.P. 11(a)(2) permits a defendant to enter a conditional plea "reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." In this case, the plea agreement permitted Smith to appeal only "the adverse ruling on his Motion to Dismiss." Smith's motion to dismiss did not challenge the factual sufficiency of the allegations of state law violations in the indictment. We decline to permit Smith to challenge his conviction on new grounds and

thereby violate the conditions expressly established in the plea agreement.

## V.

Finally, Borden contends that the district court erred in calculating his sentence under the sentencing guidelines. His challenge is two-fold. First, Borden contests the district court's application of § 2Q2.1(b)(3) to yield a five-level enhancement based on the market value of the illegally obtained mussels. According to Borden, the district court should have used his profits from the musseling activities rather than the market value of the mussels as the basis for any § 2Q2.1(b)(3) enhancement. However, § 2Q2.1(b)(3)(A) clearly directs courts to determine the "market value of the fish, wildlife, or plants" involved in the case, and then to "increase the offense level by the corresponding number of levels from the ['Fraud and Deceit'] table in § 2F1.1 . . . ." Here the enhancement properly reflected the total market value of the mussels involved—$55,784.76.

Second, Borden challenges the district court's decision to impose a two-level enhancement for Borden's role as "an organizer, leader, manager, or supervisor in [the] criminal activity" under § 3B1.1(c) of the guidelines. This argument is meritless. The record shows that Borden organized many Ohio River mussel dives by making cash advances to Hicks, informing several divers about the location of the Ohio River mussel beds, and warning divers of the DNR "crackdown" on the Ohio River. The trial court's factual finding that Borden assumed a leadership role in the musseling activity was not clearly erroneous, *see United States v. Smith,* 914 F.2d 565, 569 (4th Cir.1990) (holding that the clearly erroneous standard of review applies to § 3B1.1(c) determinations), and we affirm Borden's sentence.

---

* Similarly, we find no merit in appellants' contention that the two predicate West Virginia statutes are unconstitutionally vague. W.VA. CODE § 20–1–2 adequately defines "wildlife" and "open season," and DNR's Ohio River Commercial Fishing Regulations state that "[t]he taking of mussels is not allowed at the present time."

The predicate statutes, read in conjunction with these governing statutory definitions, are sufficiently clear to give "fair notice" of the illegal nature of appellants' conduct. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

**1064**

## VI.

We find no merit in appellants' other assignments of error. It is plain that appellants engaged in interstate commercial transactions in wildlife in utter disregard of protective measures imposed by state law. This is precisely what the Lacey Act was passed to prevent. For the foregoing reasons, the judgments of the district court are

*AFFIRMED.*