UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN MICHAEL CERCEO; U.S. ROUTE
29, MADISON PROJECT, INCORPORATED,
<u>Plaintiffs-Appellants,</u>

No. 96-1781

v.

WILLIAM E. SHMIDHEISER, III,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-96-6-3-C, CK-95-680-6)

Argued: May 7, 1997

Decided: June 10, 1997

Before RUSSELL and HALL, Circuit Judges, and
TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Roy David Bradley, Madison, Virginia, for Appellants.
Kevin Philip Oddo, FLIPPIN, DENSMORE, MORSE, RUTHER-
FORD & JESSEE, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants J. Michael Cerceo ("Cerceo") and U.S. Route 29, Madison Project, Incorporated ("U.S. Route 29") (collectively "Appellants"), appeal the district court's conclusions that Appellee William E. Shmidheiser, III ("Shmidheiser"), as trustee under a deed of trust for U.S. Route 29, breached a fiduciary duty owed to U.S. Route 29 and inadequately advertised a foreclosure sale of real property mortgaged by U.S. Route 29. Like the bankruptcy and district courts, we conclude that Shmidheiser breached no fiduciary duty and properly conducted the foreclosure sale. Consequently, we affirm the judgment of the district court.

I.

In 1989, Cerceo and Walter Simonson ("Simonson") were shareholders of U.S. Route 29, which purchased 266 acres of real property ("the property") in Madison County, Virginia, by securing a $650,000 loan from Dominion Farm Loan Corporation ("DFLC"), the predecessor in interest to Dominion Bank ("Dominion Bank"). U.S. Route 29 borrowed an additional $250,000 from DFLC for working capital, and both loans were secured by first and second deeds of trust on the property in favor of DFLC and by personal guarantees of Cerceo and Simonson.

By May 1992, U.S. Route 29 defaulted on the loans, thereby prompting Dominion Bank to mediate an agreement by which Cerceo and Simonson would divide the property. Under Dominion Bank's tutelage, Simonson acquired 170 acres of the property by satisfying half of the debt to Dominion Bank and abjuring his interest in U.S. Route 29 in favor of Cerceo. For his part, Cerceo paid Dominion Bank an additional $78,000 and executed a promissory note in favor of Dominion Bank for $400,000 subject to the two deeds of trust. This

2

promissory note was secured by a lien on production inventory of Cerceo's winery, Misty Mountain Vineyards ("Misty Mountain"), which had executed a deed of trust on its real property in favor of Second Bank and Trust of Culpeper ("Second Bank") in exchange for a $465,000 loan. U.S. Route 29, through Cerceo, retained the remaining 91 acres of the property, which was zoned for commercial use.

The year 1992 was not a banner year for Cerceo. By November 1992, Cerceo defaulted on the $400,000 promissory note executed in favor of Dominion Bank; subsequently, Misty Mountain defaulted on the $465,000 loan from Second Bank and thereafter filed a bankruptcy petition, thereby frustrating Second Bank's attempt to foreclose on the winery realty. Thus, Cerceo, U.S. Route 29, and Misty Mountain were in financial straits.

During Misty Mountain's bankruptcy proceeding, First Union National Bank of Virginia ("First Union") purchased the $400,000 promissory note that Cerceo executed in favor of Dominion Bank; moreover, First Union attempted to enforce the rights under the promissory note by intervening in Misty Mountain's bankruptcy proceeding to prohibit Misty Mountain from applying the proceeds of the sale of its inventory to satisfy any other creditors other than First Union. Attempting to salvage Misty Mountain's failing fortunes, Cerceo successfully negotiated for the use of Misty Mountain's cash collateral in exchange for granting First Union a junior lien on the winery realty. Thereafter, Shmidheiser, while counsel for First Union, was appointed trustee on the U.S. Route 29 deeds of trust.

Recognizing that the only hope of remaining financially afloat was to sell the realty U.S. Route 29 and Misty Mountain held, Cerceo was elated to discover that Disney, Incorporated, entertained ideas of developing an amusement park near the 91-acre parcel and the winery property. Unfortunately, however, Disney abandoned its schemes; consequently, the value of the properties plummeted. Seeking to enforce their rights as creditors, First Union and Second Bank attempted to foreclose on both parcels of realty. As junior lienor, First Union proposed an aggressive marketing strategy that would foment interest in the winery, gain momentum, and culminate in a handsome sale price. Likewise, Cerceo shared this sentiment in an effort to salvage his failing businesses and avoid, if possible, any deficiency judg-

3

ment. In this connection, Cerceo hired marketing consultants Woltz & Associates ("Woltz") to plan a sales strategy. Accordingly, First Union and Cerceo sought a delay in foreclosure. Conversely, as senior creditor that would likely be wholly satisfied, Second Bank contemplated a quick sale without resorting to protracted marketing strategies.

According to Cerceo, on February 20, 1995, one week prior to the foreclosure sale of the winery property, First Union advised him that if U.S. Route 29 would avoid filing bankruptcy, which would interfere with First Union's liquidation plans for the 91-acre parcel, First Union would seek to enjoin Second Bank's foreclosure sale. Taken with the proposal, Cerceo agreed, provided that First Union would engage Woltz to sell not only the winery property, but also the 91-acre parcel. First Union proved amenable to this scheme, so, joining forces, Cerceo and First Union successfully moved the bankruptcy court to enjoin Second Bank's foreclosure sale of the winery property.

Despite their plans, First Union subsequently advised Cerceo that Shmidheiser dispensed with Woltz and elected to conduct the foreclosure sale of the 91-acre parcel himself. Accordingly, Shmidheiser advertised the sale of that parcel each week for four consecutive weeks in The Madison County Eagle, a local newspaper of general circulation. Responding to the advertisement, a handful of putative purchasers appeared for the foreclosure sale, and that parcel was sold for $250,000.

Galled by this turn of events, U.S. Route 29 filed a bankruptcy petition in April 1995, and in May of that year, Shmidheiser filed a suit in state court seeking a deficiency judgment in an amount representing the difference between the $250,000 sale price and the balance on the $400,000 promissory note. Shmidheiser's suit prompted Cerceo to file suit in state court against Shmidheiser, asserting a claim of breach of fiduciary duty. Cerceo's state suit was removed to the bankruptcy court, and after the parties stipulated to certain facts, the bankruptcy court tried the issues of the breach of fiduciary duty, the propriety of the foreclosure sale, and the sale price of the realty. Shmidheiser prevailed in the bankruptcy court. Specifically, the bankruptcy court concluded that Shmidheiser breached no fiduciary duty. See Va. Code Ann. § 26-58 (Michie 1995). Also, the bankruptcy court

4

held that Shmidheiser complied with Virginia law regarding advertisement of the foreclosure sale, see Va. Code Ann. § 55-59.2A2 (Michie 1995), and finally that the sales price was not so outrageously deficient as to shock the judicial conscience.

The Appellants appealed to the district court only the issues of the propriety of the foreclosure sale and the breach of fiduciary duty. The district court affirmed, holding that Shmidheiser breached no fiduciary duty and properly conducted the foreclosure sale. Unsuccessful in the district court, the Appellants appeal to us, challenging these two conclusions and attempting to assert a variety of contentions that were never raised in the bankruptcy or district courts or were not preserved for appeal to or from the district court.

II.

We first state our standard of review. After stipulating to certain facts, the parties tried the case to the bankruptcy court. In such a procedural posture, we review the bankruptcy court's method of fact finding for clear error, but we exercise plenary review over its legal conclusions. See In re Morris Communications NC, Inc., 914 F.2d 458, 467 (4th Cir. 1990). The Appellants' persuading us that the bankruptcy court erred is a weighty burden indeed because "[i]n reviewing factual findings, our scope of review is particularly circumscribed, being limited to determining whether the facts as found by the [trial] court are clearly erroneous." See Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir.), cert. denied, 116 S. Ct. 380 (1995). Thus, "[f]acts are conclusive on appeal . . . unless they are plainly wrong." Id. Precedent prohibits our substituting our judgment for that of the bankruptcy court, and the force of this precept precludes reversal here unless we are "`left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Of course, as an appellate court, we are not so bound with respect to the bankruptcy court's legal conclusions, but may freely review them. See In re Tudor Assocs. II, 20 F.3d 115, 119 (4th Cir. 1994). Guided by this procedural standard, we address the Appellants' contentions.

A.

We quickly dispatch the Appellants' initial challenges to the district court's judgment. The Appellants attempt to assert here numer-

5

ous challenges that were not raised in the bankruptcy or district courts or were not preserved for appeal from either of the lower courts. Absent plain error, see Singer v. Dungan, 45 F.3d 823, 827-28 (4th Cir. 1995), exceptional circumstances, see United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir. 1976), or a fundamental miscarriage of justice, see Bakker v. Grutman , 942 F.2d 236, 242 (4th Cir. 1991), we shall not address issues raised for the first time on appeal, see Singleton v. Wulff, 428 U.S. 106, 120 (1976). We have repeatedly adhered to this precept. See, e.g. , Estate of Altobelli v. International Business Mach. Corp., 77 F.3d 78, 81 n* (4th Cir. 1996) (declining to consider if a divorce decree was a qualified domestic relations order under ERISA because the issue was not raised in the district court); Hughes v. Bedsole, 48 F.3d 1376, 1388 n.14 (4th Cir. 1995) (declining to consider a discrimination claim because it was raised for the first time on appeal), cert. denied, 116 S. Ct. 190 (1995). Similarly, reviewing courts decline to address issues raised in the trial proceedings, but not preserved for appeal. See One 1971 Mercedes Benz, 542 F.2d at 915. Again, precedent counsels us to decline to review such challenges. See, e.g., United States v. Borden, 10 F.3d 1058, 1063 (4th Cir. 1993) (refusing to consider the validity of an indictment on appeal because the issue was not properly pre-served for appeal); Buffington v. Baltimore County, Md., 913 F.2d 113, 121 (4th Cir. 1990) (explaining that the applicability of the defense of qualified immunity would not be considered on appeal for want of proper preservation in the district court); see also Hagan v. McNallen (In re McNallen), 62 F.3d 619, 625 (4th Cir. 1995) (explaining in connection with a bankruptcy discharge proceeding that appellate courts will not entertain claims if they are procedurally defaulted). Application of these principles compels us to decline con-sidering the Appellants' numerous arguments that were either not raised initially or preserved for appeal. Thus, we proceed to analyze the breach of fiduciary duty and the adequacy of the advertisement of the foreclosure sale.

B.

Observing that Shmidheiser is counsel for First Union and trustee under the deeds of trust, the Appellants posit that he breached his duty to act as a fiduciary for both First Union and U.S. Route 29. Accord-ing to the Appellants, Shmidheiser can be either counsel to First

6

Union or trustee under the deeds of trust, but he cannot serve in both capacities without violating his fiduciary duty. We conclude that Virginia statutory law forecloses this position.

Virginia law provides that a trustee under a deed of trust is a fiduciary for both the debtor and the creditor, and in this dual capacity, the trustee must act impartially respecting these two competing interests. See Whitlow v. Mountain Trust Bank, 207 S.E.2d 837, 840 (Va. 1974). As a corollary, "a trustee must refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts as fiduciary." Id. Thus, Shmidheiser must act impartially regarding First Union and the Appellants. Virginia law provides further, however, in relevant part, that:

> The mere fact that a trustee in a deed of trust to secure a debt due to a corporation is a stockholder, member, employee, officer or director of, or counsel to, the corporation, does not disqualify him from exercising the powers conferred by the trust deed nor does it render voidable a sale by such trustee in the exercise of the powers conferred on him by the trust deed so long as he did not participate in the corporation's decision as to the amount to be bid at the sale of the trust property. . . .

Va. Code Ann. § 26-58 (Michie 1995). Section 26-58, therefore, expressly contemplates that a trustee under a deed of trust may serve in the dual capacity as Shmidheiser served here, provided that Shmidheiser did not participate in the formulation of the bid at the foreclosure sale, and the record in this case supports no such inference; this conclusion is even more salient because First Union was not the successful purchaser at the foreclosure sale. Accordingly, we conclude that Shmidheiser breached no fiduciary duty owed to the Appellants given that section 26-58 explicitly provides that counsel for a creditor corporation may serve as a trustee under a deed of trust and that a foreclosure sale under such circumstances is valid unless the trustee participates in formulating the foreclosure sale bid.

C.

The Appellants next contend that Shmidheiser improperly conducted the foreclosure sale. The gravamen of this contention is that

7

Shmidheiser's advertising the foreclosure sale was inadequate because he only advertised the sale in The Madison Eagle, the local newspaper, rather than a newspaper of greater circulation such as The Richmond Times-Dispatch or The Washington Post. Again, we find that Virginia statutory law and our own precedent belie this argument.

Respecting the advertising of foreclosure sales, Virginia law provides in relevant part:

> Advertisement of sale by a trustee or trustees in execution of a deed of trust shall be in a newspaper having a general circulation in the city or county wherein the property to be sold, or any portion thereof, lies . . . .
>
> . . . .
>
> If the deed of trust does not provide for the number of publications of such newspaper advertisement, the trustee shall advertise once a week for four successive weeks . . . .

Va. Code Ann. § 55-59.2A2 (Michie 1995). In the instant suit, the deed of trust did not prescribe the method of advertising, so, relying on section 55-59.2A2, Shmidheiser advertised the foreclosure sale once per week for four consecutive weeks in the local newspaper, as the statute mandates. Accordingly, Shmidheiser followed the letter of the law, and he cannot be faulted for his strict compliance. In addition, circuit precedent eschews the very contention that the Appellants advance. In Kriesel v. Berkshire Associates, 452 F.2d 491 (4th Cir. 1971), we explained that a trustee under a Virginia deed of trust need do no more than fulfill his statutory obligations with regard to advertising a foreclosure sale:

> [The trustee] did all by way of the place, manner and duration of advertising and all other steps to effect the sale that the Virginia law requires of a trustee. [The debtor's] argument is simply that [the trustee] should have done more in the way of advertising . . . . We think the argument manifestly lacking in merit . . . there is simply no evidence that the property was not properly advertised and sold at a properly conducted sale.

8

Id. at 493. Having complied with the statutory provisions regarding advertising, we conclude that Shmidheiser properly conducted the foreclosure sale.

## III.

We decline to address matters being raised for the first instance on appeal or not properly preserved for appeal, and thus, the Appellants' challenges that attempt to circumvent these rules are not considered. Regarding the breach of fiduciary duty claim, we hold that Shmidheiser breached no fiduciary duty; rather, he acted in accordance with Virginia law. Similarly, with respect to the propriety of advertising the foreclosure sale, we hold that Shmidheiser properly advertised the foreclosure sale; hence, he need do no more. The judgment of the district court is, therefore, affirmed.[1]

AFFIRMED

_____
[1] Shmidheiser moved to strike portions of the Joint Appendix from consideration. This issue was not advanced at oral argument, and given our disposition, the motion is largely irrelevant. Regardless, we deny the motion.