**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

KLYNE MILTON MCMAHAN, JR., a/k/a
J.R., a/k/a John Adams, a/k/a Mike
McMahon,
Defendant-Appellant.

No. 97-4484

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CR-96-203)

Submitted: August 11, 1998

Decided: September 2, 1998

Before ERVIN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jennifer T. Staton, J.T. STATON, P.C., Norfolk, Virginia, for Appel-
lant. Helen F. Fahey, United States Attorney, Fernando Groene,
Assistant United States Attorney, Kent P. Porter, Assistant United
States Attorney, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Klyne Milton McMahan, Jr., appeals his conviction and sentence for conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 2, 371, 1503 (1994). We affirm.

In November 1996, McMahan was named in one count of an eleven count indictment along with his brother, Fred McMahan ("Fred"), his nephew Christopher Woodard, and other conspirators "known and unknown" that charged conspiracy to obstruct justice by attempting to prevent the forfeiture of several properties through false and misleading statements and claims. In August 1993, McMahan was indicted for a drug distribution conspiracy beginning in or about 1979 and continuing through January 1991, to which he pleaded guilty. In that indictment, the Government sought forfeiture of several properties obtained by McMahan in Kentucky. Finding that the properties either constituted proceeds derived from drug trafficking activities or facilitated such activities, the district court ordered the forfeiture of the properties pursuant to 21 U.S.C.§ 853(a) (1994).[1] Notice was provided to persons potentially having an interest in the forfeited properties and several petitions were filed challenging the forfeitures.[2]

_____

[1] The forfeited properties were obtained and used to provide security and protection to marijuana fields adjacent to McMahan's farm, to cultivate marijuana seedlings, to process harvested marijuana, and to impress McMahan's girlfriend.

[2] Nancy Landi filed a petition as the titled owner for the properties known as the "C.J. Gray Place" and the "Equitable Property;" Christopher Woodard filed a petition as the titled owner for the "Lake House;" Sonja Woodard, McMahan's sister, filed a petition as the titled owner for the "Roberts Place;" Klyne Milton McMahan, Sr., filed a petition for the "Rose Place" and the "Humphrey's Place," though he was not the titled owner; and Monica Napieralski filed a petition as the titled owner of the "Field's Place."

2

At trial, the Government presented evidence that while serving his sentence for the 1993 drug conspiracy conviction, McMahan devised and implemented a plan to fight the forfeitures. McMahan began by writing his brother Fred[3] and insisting that they develop a plan to fight the forfeitures. Through numerous letters and phone calls, McMahan directed Fred and the persons filing the petitions challenging the forfeitures ("petitioners") on how to fight the forfeitures. Fred testified that McMahan told the petitioners the stories they needed to tell to justify their ownership claims and to make it look like the properties were purchased by the people who held the titles. These stories were also told to the attorneys filing the petitions on behalf of the petitioners. Fred further testified that his job was to coordinate the attorneys for the petitioners and make sure that each petitioner remained a part of the plan. The record also establishes that McMahan kept an extensive written record of the stories he wanted the petitioners to tell to avoid inconsistencies.

Also at trial, Monica Napieralski testified that following several phone calls and letters from McMahan, McMahan convinced her that she could win the forfeiture action if she asserted that she had danced for the money used to buy the property. Napieralski paid no money for the property even though it was titled in her name. Nancy Landi also testified that McMahan instructed her on what to say about how she purchased the properties but was not to say that the purchase money came from McMahan. Chris Woodard testified that the property he asserted ownership over had been purchased by McMahan and put into Woodard's name. Woodard admitted that some of the facts in his petition were supplied by McMahan and that the facts were not true.

On appeal, McMahan first asserts that the district court improperly denied his motions for continuance prior to trial and at trial. We review denial of a continuance for abuse of discretion. See United States v. Bakker, 925 F.2d 728, 735 (4th Cir. 1991). Abuse of discretion will only be found when the denial was an "`unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable

_____

[3] Fred McMahan was a licensed and practicing attorney in Florida who assisted McMahan in the marijuana business and received money from McMahan to attend law school.

request for delay.'" Id. (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)).

McMahan claims that a continuance was necessary given the volume of records and because he had several out of state witnesses for which he could not get addresses. The court concluded that the voluminous record and potentially large amount of witnesses did not merit a continuance and noted that McMahan had been through the discovery material twice before in previous litigation and could assist his counsel. Also, McMahan's attorney admitted that she had had complete access to the documents, received a summary sheet of the evidence numbered by series and logged by number, and had seventy days in which to go through the material. McMahan fails to show that counsel was unable to prepare for trial or that he was prejudiced in any way. Thus, the district court did not abuse its discretion in denying McMahan's motion for a continuance.

McMahan next asserts that the district court erred by denying his motion to dismiss on double jeopardy grounds. McMahan claims that his 1993 indictment for drug conspiracy constitutes the same offense as the present indictment for conspiracy to obstruct justice.

In analyzing double jeopardy claims involving conspiracy charges this court applies a "totality of circumstances" test. See United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir. 1988). To determine whether two conspiracies constitute the same offense, we consider the following five factors: (1) the time periods of the conspiracies; (2) the place where the conspiracies occurred; (3) the charged co-conspirators; (4) the overt acts done in furtherance of the conspiracies; and (5) the substantive statutes involved. Id. at 1189.

We find that the two conspiracies were not the same. First, the record shows that there is no overlap in the time periods of the conspiracies. The 1993 indictment involved two charges. The first count involved drug trafficking conspiracy operating from 1979 to January 1991. The second count involved a money laundering conspiracy operating from December 1983 to March 1991. The present indictment, however, charges a conspiracy to obstruct justice from April 1993 to 1996.

4

Second, the activities underlying the 1993 indictment took place in Virginia, Kentucky, Florida, Texas, Arizona, and Colorado. The activities underlying the present indictment were also conducted in Virginia, Kentucky, and Florida. However, other significant conduct underlying the present indictment occurred in Tennessee and Illinois. Thus, the obstruction of justice conspiracy encompassed different areas.

Third, there is virtually no overlap in the named co-conspirators. The only co-conspirator named in both conspiracies is McMahan.

Fourth, the two conspiracies had separate purposes involving different overt acts. The 1993 indictment involved a drug conspiracy with the primary purpose of making money through the distribution of marijuana and cocaine and a money laundering conspiracy intent on concealing drug proceeds through the purchasing of real estate and investing in businesses. The overt acts involved growing, harvesting, transporting, purchasing, and distributing marijuana, as well as the purchase of properties with drug proceeds. The present indictment involves a conspiracy to obstruct justice by preventing the seizure and forfeiture of property obtained through drug proceeds. The overt acts in this conspiracy involve written and oral communications between McMahan and the other co-conspirators concerning forfeiture litigation and the filing of false and perjurious petitions. Though the earlier conspiracies provide context for the current conspiracy, the overt acts in each are different. See, e.g., United States v. Mullins, 22 F.3d 1365, 1373 (6th Cir. 1994) (proof of the underlying offense is relevant to the defendant's motive in obstruction of justice cases).

Finally, the substantive statutes involved also differ. The 1993 indictment involved violations of 21 U.S.C. #8E8E # 841, 846 (1994), and 18 U.S.C. §§ 371, 1956(1)(B)(i) (1994). Whereas the present indictment involves the violation of 18 U.S.C. §§ 371, 1503 (1994). Because the specific nature and scope of the conspiracies as well as their time frames differ, we find that McMahan was not placed in double jeopardy.

McMahan next asserts that the evidence was insufficient to support his conviction of conspiracy to obstruct justice. We must affirm McMahan's conviction "if there is substantial evidence, taking the

5

view most favorable to the Government, to support it." <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). Viewed in the light most favorable to the Government, the evidence at trial showed that McMahan associated and agreed with others to prevent forfeiture of the Kentucky properties. The evidence at trial--including testimony of co-conspirators, along with several letters written by McMahan--is sufficient to sustain his conviction of conspiracy to obstruct justice.

McMahan next asserts that the district court erred in enhancing his offense level four levels for his role as a leader or organizer of five or more people pursuant to <u>U. S. Sentencing Guidelines Manual</u> § 3B1.1 (1997) ("USSG"). The evidence at trial showed that McMahan, through his brother Fred, devised, organized and controlled from prison a plan to challenge the forfeiture of the Kentucky properties that involved five or more people. Thus, the district court's four-level enhancement was not clearly erroneous. <u>See United States v. Borden</u>, 10 F.3d 1058, 1063 (4th Cir. 1993).

McMahan next asserts that the district court erred by applying a two-level enhancement for obstruction of justice due to McMahan's false testimony at trial pursuant to USSG § 3C1.1. "In determining that a defendant has obstructed justice, it is preferable for the district court to make specific findings that the defendant testified `(1) falsely, (2) as to a material fact, and (3) willfully in order to obstruct justice, not merely inaccurately as the result of confusion or a faulty memory.'" <u>United States v. Cook</u>, 76 F.3d 596, 605 (4th Cir. 1996) (quoting <u>United States v. Thompson</u>, 962 F.2d 1069, 1071 (D.C. Cir. 1992)).

The record shows that the district court found that McMahan committed perjury during his trial testimony when McMahan testified that he bought the Kentucky properties with money he earned from shoeing horses and that he had no interest in the "Lake House," which was purchased by Jerry Berry with $40,000 provided by McMahan. The district court based this determination on the fact that there was no evidence at trial that McMahan had any legitimate income during the time period in which the properties were purchased. Further, the district court found that the funds given to Berry were part of the consideration of the purchase of that property. McMahan's testimony was intended to affect the outcome of the trial. Therefore, we conclude

6

that the district court did not clearly err in applying a two-level enhancement for obstruction of justice.

Finally, McMahan asserts that the district court improperly ordered his sentence to run consecutively with his previously imposed federal sentences. Under USSG § 5G1.3(a):

> If the instant offense was committed while the defendant was serving a term of imprisonment . . . or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

Thus, because McMahan committed the crime while serving a term of imprisonment, the district court properly imposed the current sentence consecutively to McMahan's undischarged sentence.

Accordingly, we affirm McMahan's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7