FAY, Circuit Judge,
dissenting:
The majority opinion is both thorough and scholarly in dealing with this complicated matter. With some hesitation, I most respectfully dissent from that portion of the majority opinion upholding the validity of Honduran Resolution 030-95. The theme of the majority opinion is that the government of Honduras has “shifted” its position. The question for determination is phrased as being complicated by the changed or new position of the Honduran government. The majority then decides this issue within the framework of whether or not we are free to follow the Honduran government’s original position.
Try as I might, I simply cannot read this record that way. There was never unanimity nor agreement concerning the validity of Resolution 030-95. That question was hotly contested. But, throughout the course of this litigation, the resolution of that question was based upon the weight given by the trial judge to the evidence presented by the U.S. government during a pretrial hearing on foreign law. At that time, the Honduran courts had not ruled. Now they have.
It should come as no surprise to anyone that some of the “expert” witnesses were correct and some were wrong. Nor should we be surprised that it was the courts of Honduras which ultimately answered the question. That is the way it works in Honduras and in the United States of America. Simply stated, it is my position that we are bound by the rulings of the Honduran courts declaring Resolution 030-95 null and void. This being the case, the defendants convictions must be reversed since one of the Honduran laws relied upon by the jury in finding guilt has now been found to be a nullity.
Most respectfully, I disagree with the majority’s conclusion that the government of Honduras has changed its position. Government officials testified on both sides of the issue before the district court. There was no one official voice for the government of Honduras. But, there is now. The Honduran courts have ruled and the Honduran Embassy has filed an amicus brief advising us of the Honduran government’s position—Resolution 030-95 is null and void and was so during the critical time charged in the second superceding indictment. That is the only official government position I am aware of in this record.
We all agree that the key component to any alleged Lacey Act § 3372(a)(2)(A) violation is the commission of a predicate State or Foreign offense concerning fish or wildlife. We further agree that, for purposes of these appeals, three predicate offenses are pertinent. Of those three, my concern goes to Resolution 030-95 concerning the minimum legal size of harvested lobster tails.
As the majority correctly notes, the district court properly conducted a foreign law hearing to determine whether Resolution 030-95 was, in fact, a valid Honduran law during the time period charged in the *1248 second superseding indictment. Over the testimony of an expert in Honduran law, a Honduran law professor and former Ministry of Justice, the then Attorney-General of the Republic of Honduras, the Honduras Bar Association and others, the District Court, based upon the testimony of one lower-level Honduran government official, Liliana Paz, Secretary General of the Ministry of Agriculture and Livestock, concluded that Resolution 030-95 was a valid law.
Following trial and conviction, defendant David Hensen McNab (“McNab”) challenged the validity of Resolution 030-95 in the Court of First Instance of Administrative Law in Honduras (“Honduran Court”). That challenge was opposed by an attorney representing the government of Honduras. At the conclusion of that proceeding, the Honduran Court declared Resolution 030-95 to be null and void. Specifically, on May 23, 2001, the Honduran Court found:
First: ... [Resolution 030-95] [does] not conform to law by virtue of having violated the legal code at the time [it][was] issued. Second: the challenged [Resolution] ..., No. 030-95 of December 5, 1995, [is] entirely voided, but this is only for purposes of [its] annulment and future inapplicability: This Resolution does not confer any right to claims.
R. at 5:324 Ex. B. The Honduran Court premised its decision on the fact that Resolution 030-95 was not properly issued by the President of the Republic of Honduras and authorized by the proper Secretary or Under Secretary of State as is required under Honduran law. Subsequently, the government of Honduras appealed the Honduran Court’s ruling to the Court of Appeals of Administrative Matters (“Honduran Court of Appeals”) which on October 11, 2001, confirmed the correctness of the Honduran Court’s decision.
The rulings of the Honduran courts do raise a second question as to whether or not the ruling applies retroactively. As quoted above, the language of the Honduran Court could be construed to mean prospective application only. That is the position the majority takes in this case. Therefore, the critical question before this court is whether or not Resolution 030-95 was valid at the time of the defendants’ conduct as charged in the second su-perceding indictment. This question is determined by whether the invalidation of Resolution 030-95 is to be applied retroactively or prospectively. If the invalidation of Resolution 030-95 is to be applied retroactively, it seems to me that reversal of the defendants’ convictions is mandated. If invalidation is to be only applied prospectively, reversal is not required.
We all agree that we review a district court’s interpretation of foreign law de novo. United States v. Gecas, 120 F.3d 1419, 1424 (11th Cir.1997) (en banc). We also agree that under certain circumstances an underlying Lacey Act predicate offense need not be independently prosecutable. See United States v. Borden, 10 F.3d 1058 (4th Cir.1993) (affirming Lacey Act conviction where the enforcement of underlying predicate state law was barred by applicable state statute of limitations but not by federal statute of limitations). However, Borden, or any similar case, is fundamentally different than this case where the predicate substantive criminal law supporting the Lacey Act convictions cannot be enforced, not because of a procedural bar, but because the law itself has been invalidated by the courts through nullification. In other words, what was thought to be a crime turns out to not be a crime under Honduran law. It bears noting that had U.S. law been implicated, reversal of the convictions would not be in question and the case would easily be resolved in the defendants’ favor. In the *1249 United States, where a substantive criminal law is subsequently declared to be invalid by the courts, any convictions thereon would be reversed.
Further troubling is the fact that as a matter of Honduran constitutional law, these defendants could not be tried and convicted for violation of Resolution 030-95 in Honduras. In Honduras, as in the United States, any criminally enforceable statute later declared to be invalid by the courts is retroactively applied to any criminal defendant. Article 96 of the Honduran Constitution specifically provides, “[t]he Law does not have retroactive effect, except in penal matters when the new law favors the delinquent [ (i.e., criminally convicted) ] or the person that is prosecuted.” Constitución de la Republicá de Honduras art. 96.
The majority makes note of Article 96 but simply asserts its inapplicability by concluding that “[a]t the of time the defendants’ conduct, harvesting lobsters under 5.5 inches was a violation of Resolution 030-95.” As stated above, if the invalidation of Resolution 030-95 is retroactively applied, as I believe it must be, then at the time of the defendants’ conduct, there would not have been a violation of Resolution 030-95. To this point, there are authorities in the record which I find particularly relevant in deciding whether the Honduran Court’s invalidation of Resolution 030-95 should be retroactively applied.
We start with the official voice of Honduras in the United States. The country of Honduras, through its Embassy in Washington, D.C., has filed an amicus brief stating unequivocally that retroactive application is the law of Honduras. The current Attorney General of the Republic of Honduras, Sergio Zavala Leiva, the National Human Rights Commissioner of the Republic of Hpnduras, Leo Valladares Lanza,[1] the current Secretary of State of the Offices of Agriculture and Livestock, Guillermo Alvarado Downing and Secretary Downing’s subordinate and star U.S. government witness before the district court, Secretary General of the Ministry of Agriculture and Livestock, Liliana Paz, all support the position that retroactive application is required. The only witness presented suggesting that retroactive application is not required is Juan Arnaldo Hernandez Espinoza, an Assistant Prosecutor General of the Public Ministry of the Republic of Honduras.[2] Thus, the overwhelming evidence before this court is *1250 squarely on the side of the retroactive application of the invalidation of Resolution 030-95. I can come to no other conclusion.
As to the appropriate interpretation of the Honduran Court’s use of the terms “annulment” and “future inapplicability,” Attorney General Leiva provides the most reasoned and reasonable explanation. Attorney General Leiva explains:
The reason that the laws of Honduras and, in particular, the Court of Administrative Appeals, with its specific language in its judgment, only set forth its future inapplicability is to guarantee the legal security of the State, protecting it from damages and losses that could have been caused by the enforcement of an act that is null and void as a matter of law.
(Leiva Decl. ¶ 8).
Apparently, in Honduras the government may be subject to civil liability for the enforcement of a subsequently declared invalid law. Therefore, in the context of Honduran law, the Honduran Court’s language makes sense and simply seeks to limit the government’s liability and protect its treasury. The precise language of the Honduran Court supports this interpretation. Following the use of “annulment” and “future inapplicability” is a colon followed by the following illuminating language, “[tjhis Resolution does not confer any right to claims.” Thus, Attorney General Leiva’s explanation, as compared to the other evidence before the court, is most compelling. Furthermore, this court should not interpret Honduran law in a vacuum. As stated above, in Honduras, Article 96 of the Honduran Constitution retroactively applies the invalidation of Resolution 030-95 to any criminal defendant. The Honduran Court certainly would have been aware of the existence and effect of Article 96 when crafting the language and scope of its opinion and this court should seek to interpret the Honduran Court’s opinion in its proper context.
The majority advances the important principle of finality in support of its decision. As a general proposition, I agree that finality is an important aspect of American jurisprudence. However, in the context of an invalidated substantive criminal law which forms the basis of a criminal prosecution or conviction, reliance on the concept of finality is misplaced. As stated above, under both U.S. and Honduran law, retroactive application is warranted for a criminal defendant charged or convicted of a subsequently declared invalid criminal statute. Cf., Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109, 119 (1974) (in the context of a petition for relief pursuant to 28 U.S.C. § 2255, concluding that if conviction and punishment are for an act not made criminal by the law, “[tjhere can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice .... ” (Internal quotations omitted)).
For emphasis, I repeat again that the majority opinion discusses extensively and is strongly critical of the changed position or shift by the Honduran government. While that terminology may give comfort to the majority, it is simply not accurate. While various government officials gave conflicting opinions regarding the validity of Resolution 030-95, this was before the Honduran courts ruled. The Honduran courts have now ruled and both agree, Resolution 030-95 was null and void. The majority casts this in an unfavorable light akin to something sinister. In my opinion, this is no different than what occurs routinely in our country. Attorneys, and even the Attorney General of a state or the United States, often express opinions about statutes only to find that after a court challenge, they were wrong. That is *1251 all that happened here. Some of the experts were right; some were wrong. But, the Honduran courts have now spoken and there is simply no doubt that Resolution 030-95 is null and void as if it never existed.
To suggest that the newly issued statements and opinions of Honduran officials do not carry the weight of the earlier statements is a strange position for members of the judiciary. The so-called “shift in position” is the result of lawful litigation within the courts of a foreign nation. I think we would be shocked should the tables be reversed and a foreign nation simply ignored one of our court rulings because it caused some frustration or inconvenience.
The evidence in this case supports the conclusion that the defendants were guilty of knowingly violating the law at the time they harvested, shipped and sold these “shorts.” The prosecutors did their very best to establish the law of Honduras which is essential under the Lacey Act. It is easy to understand the frustration inherent in this present situation. But, the Lacey Act, by its very terms, is dependent upon the laws of a foreign sovereign. In this situation, we do not control the outcome of challenges made to those underlying laws. No one has suggested that McNab was not exercising his lawful rights as a citizen of Honduras or that the courts of Honduras were without authority to issue the decisions they did.
Most reluctantly, I therefore dissent.

. Although his opinion was never altered, amended or changed in any manner, the majority notes that a National Marine and Fisheries Service agent who interviewed Commissioner Lanza indicated that Commissioner Lanza revealed that he felt " 'pressured' by McNab’s representatives to issue a quick decision.”

. In his opinion, Assistant Attorney General Espinoza ("Espinoza”) indicates that there is no retroactive application of the invalidation of Resolution 030-95 because "the sanction to which [the defendants'] conduct applies is based on a measure that originates in the Fishing Law and not in the activity of the Executive Branch.” Appellee's Addendum of Foreign Law Materials at tab 1. Upon closer examination, it becomes clear that Espinoza's opinion is premised on the assumption that the Fishing Law, not Resolution 030-95, defines the minimum lobster harvest size. Therefore, invalidation of Resolution 030-95, a resolution implemented pursuant to the authority of the Fishing Law, is without import and the question of retroactivity is rendered irrelevant. This opinion is mistaken for two critical reasons. Firstly, Espinoza’s opinion ignores the fact that, for purposes of U.S. law, the predicate act the defendants were charged with violating is Resolution 030-95, not the Fishing Law. Secondly, Espinoza’s opinion ignores the fact that, with regard to minimum lobster harvest size, the Fishing Law is silent and directs such restrictions to be fashioned pursuant to regulation. See Decreto No. 154, May 19, 1959, La Gaceta, June 9, 1959, art. 70.